No. 97-448

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 13

FRANK DELAWARE,

Plaintiff and Appellant,

vs.

K-DECORATORS, INC., a Montana Corporation,

d/b/a K-Designers and LEE A. JUDSON, Individually,

Defendant, Respondent and Cross-Appellant.

APPEAL FROM: District Court of the Thirteenth Judicial District,

In and for the County of Yellowstone,

The Honorable Robert W. Holmstrom, Judge presiding.

No

COUNSEL OF RECORD:

For Appellant:

Craig W. Holt, Billings, Montana

For Respondent:

Michael K. Rapkoch, Felt, Martin & Frazier, Billings, Montana

Submitted on Briefs: April 9, 1998

Decided: January 28, 1999

Filed:

_____

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1. Frank Delaware (Delaware) appeals from a ruling made by the Thirteenth Judicial District Court, Yellowstone County, on the penalty provision of the Montana Wage Protection Act, from the court's order denying Delaware's Motion for a New Trial, and from the court's order granting summary judgment to K-Decorators, Inc. (K-Decorators) on Delaware's wrongful discharge claim. K-Decorators cross-appeals from the District Court's order awarding attorney fees to Delaware, from the court's order denying Lee Judson's (Judson) motion to dismiss Delaware's claims against him, and from the court's order imposing discovery sanctions on K-Decorators. We affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

¶2. Delaware raises three issues on appeal, which we restate as follows:

¶3. 1. Did the District Court err in ruling that Delaware could only recover a penalty pursuant to Montana's Wage Protection Act for wages which K-Decorators owed Delaware on his last day of employment which K-Decorators did not pay within three days thereafter?

¶4. 2. Did the District Court err in denying Delaware's Motion for a New Trial?

¶5. 3. Did the District Court err in granting summary judgment to K-Decorators on Delaware's wrongful discharge claim?

¶6. K-Decorators raises three issues on cross-appeal, which we restate as follows:

¶7. 4. Did the District Court err in awarding attorney fees and costs to Delaware?

¶8. 5. Did the District Court err in refusing to dismiss Delaware's claims against Judson, individually?

¶9. 6. Did the District Court err in imposing discovery sanctions on K-Decorators?

## Factual and Procedural Background

¶10. K-Decorators hired Delaware in the mid-1980s to sell home improvement construction projects. After Delaware worked for the company for approximately one year, K-Decorators fired him. Judson, K-Decorators' president, rehired Delaware in the fall of 1990 to manage the company's sales staff. Delaware began working for K-Decorators for the second time on September 30, 1990. Delaware sold for K-Decorators and was responsible for generating and training a sales staff. K-Decorators paid Delaware commissions based on his sales and on the sales which his sales staff made. Delaware was entitled to his commission when K-Decorators completed a project and received payment for its work.

¶11. Delaware worked full-time as K-Decorators' sales manager for approximately three years. Judson testified that K-Decorators' sales volume "substantially increased" during Delaware's tenure as sales manager. Similarly, Delaware estimated that he increased K-Decorators' sales volume by 80 percent.

¶12. On September 20, 1993, Judson removed Delaware from the sales manager position but offered to keep Delaware on as a salesman. Judson wrote Delaware a letter the following day which explained that Judson was reorganizing K-Decorators to "improve [the] bottom line results for the company." Judson's letter also explained that the sales manager position and the general manager position were being consolidated and that Judson's brother Al was going to take over the new position. The letter also reiterated Judson's offer to keep Delaware on as a salesman. Delaware declined Judson's offer.

¶13. On September 7, 1994, Delaware filed a complaint which included claims against Judson individually. Count I of Delaware's Complaint alleged that he had been discharged in violation of Montana's Wrongful Discharge from Employment Act. Count II of Delaware's Complaint alleged that K-Decorators owed him

**$146,271.99 for unpaid wages.**

¶14. On September 30, 1994, K-Decorators filed a motion to dismiss pursuant to Rule 12(b)(6), M.R.Civ.P. K-Decorators, however, did not file a supporting brief with this motion. Consequently, the District Court denied this motion to dismiss on October 18, 1994, pursuant to Rule 2(b), Unif.Dist.Ct.R., which provides that a motion is to be deemed without merit if the moving party does not file a supporting brief within five days after filing the motion. On October 28, 1994, K-Decorators filed a second motion to dismiss pursuant to Rule 12(b)(6), M.R.Civ.P., and a supporting brief, which asserted that Judson was not a proper defendant since corporate officers cannot be held individually liable for acts taken on behalf of a corporation in furtherance of corporate goals, policies and business interests. The District Court denied this motion reasoning that Judson conceded that a motion to dismiss for failure to state a claim for which relief can be granted on his behalf was without merit when he failed to file a supporting brief within five days after the first motion for failure to state a claim was filed.

¶15. On November 16, 1994, Delaware filed a Motion to Compel Discovery. In his supporting brief, Delaware stated that K-Decorators had not answered his first set of interrogatories, requested the court to compel K-Decorators to answer the interrogatories, and requested the court to award him his attorney fees and costs for filing the motion. In response, K-Decorators filed a brief on November 23, 1994, wherein it argued that Delaware's interrogatories violated Rule 33(a), M.R.Civ.P., and thus requested the District Court to deny Delaware's Motion to Compel Discovery.

¶16. On December 13, 1994, the District Court issued an Order which granted Delaware's Motion to Compel Discovery and ordered K-Decorators to answer Delaware's first set of interrogatories within fifteen days. One month later, on January 13, 1995, Delaware filed a motion for sanctions pursuant to Rule 37(b)(2), M.R.Civ.P., and a supporting brief wherein he requested the District Court to grant default judgment against K-Decorators because it did not comply with the District Court's order to answer his first set of interrogatories within fifteen days. In the alternative, Delaware requested the District Court to pierce the corporate veil so that all named defendants would be liable. Delaware also requested his attorney fees and costs for filing his motion for sanctions.

¶17. The District Court held a hearing on Delaware's motion for sanctions on March 1, 1995. Since K-Decorators' attorney acknowledged that Delaware's interrogatories were not answered within fifteen days of the court's order dated December 13, 1995, the District Court sanctioned K-Decorators by awarding Delaware his attorney fees and costs.

¶18. On May 3, 1995, K-Decorators filed an offer of judgment pursuant to Rule 68, M.R.Civ.P., for $32,500. Delaware rejected the offer.

¶19. Delaware filed a Motion for Partial Summary Judgment pursuant to Rule 56, M.R.Civ.P., on January 31, 1996. Delaware argued that no genuine issue of material fact existed as to whether K-Decorators owed Delaware unpaid wages nor whether K-Decorators discharged Delaware. On February 6, 1996, K-Decorators filed a Motion for Partial Summary Judgment pursuant to Rule 56, M.R.Civ.P. K-Decorators asserted that no genuine issue of material fact existed as to whether Delaware was constructively discharged nor whether K-Decorators had a legitimate business reason to restructure upper management and eliminate Delaware's sales manager position.

¶20. The District Court issued an Order on February 27, 1996, wherein it denied Delaware's Motion for Partial Summary Judgment and granted K-Decorators' Motion For Partial Summary Judgment. The court ruled that no issue of material fact existed as to whether K-Decorators had a legitimate business reason for discharging Delaware.

¶21. A jury trial was held April 1 through 4, 1996, on Delaware's claim for unpaid wages. At trial, both parties had accountants testify as expert witnesses as to the amount of commissions which K-Decorators owed Delaware based on the company's books. K-Decorators introduced testimony and evidence that it made payments on behalf of Delaware which Delaware did not pay back and that Judson paid Delaware commission out of his personal checking accounts which were not recorded in K-Decorators' books. K-Decorators argued that these amounts should be subtracted from the amount of commissions that K-Decorators' books showed that the company owed Delaware. The jury returned a verdict for Delaware in the amount of $1,185.14.

¶22. On August 5, 1996, Delaware filed a Motion for a New Trial pursuant to Rule

59, M.R.Civ.P., and § 25-11-102, MCA. In his supporting brief, Delaware argued that the evidence presented at trial was insufficient to justify the jury's verdict. On September 30, 1996, the District Court denied Delaware's Motion for New Trial. The court pointed out that Delaware, in his supporting brief, showed how the jury could have reached its verdict based on the testimony and evidence admitted at trial.

¶23. On April 9, 1996, K-Decorators filed a Memorandum of Costs pursuant to § 25-10-201, MCA, and attorney fees pursuant to § 39-3-214, MCA. Delaware filed his Memorandum of Costs pursuant to § 25-10-201, MCA, and attorney fees pursuant to § 39-3-214, MCA, on April 19, 1996. The District Court held a hearing on these motions on October 30, 1996. K-Decorators and Delaware each presented evidence and testimony as to reasonable attorney fees and costs. On December 26, 1996, the District Court issued Findings of Fact, Conclusions of Law and Order wherein it ruled that Delaware's Memorandum of Costs was timely filed, ordered that Delaware's costs be taxed at $165, ordered that K-Decorators' costs be taxed at $314.50, awarded Delaware attorney fees in the amount of $10,000, and denied K-Decorators' request for attorney fees.

¶24. Delaware appeals from the District Court's ruling on the penalty provision of the Montana Wage Protection Act, from the court's order denying his motion for a new trial, and from the court's order granting summary judgment to K-Decorators on Delaware's wrongful discharge claim. K-Decorators cross-appeals from the court's order which awarded attorney fees to Delaware, from the court's order denying K-Decorators' motion to dismiss Judson, and from the court's order imposing discovery sanctions on K-Decorators.

### Issue 1.

¶25. *Did the District Court err in ruling that Delaware could only recover a penalty pursuant to Montana's Wage Protection Act for wages which K-Decorators owed Delaware on his last day of employment which K-Decorators did not pay within three days thereafter?*

¶26. At the beginning of the trial on Delaware's unpaid wage claim, the District Court ruled that, pursuant to §§ 39-3-205(1) and 39-3-206(1), MCA, Delaware could recover a penalty for wages which K-Decorators owed Delaware on his last day of

employment but not paid within three days thereafter. K-Decorators argues that the District Court erred in ruling that Delaware could recover a penalty pursuant to the Wage Protection Act because it does not protect employees who are paid on a commission basis. Delaware asserts that the District Court erred in ruling that he could not recover a penalty on wages which became due after his last day of employment at K-Decorators.

¶27. This Court's standard of review of a district court's conclusions of law is whether the court's interpretation of the law is correct. *Carbon County v. Union Reserve Coal Co., Inc.* (1995), 271 Mont. 459, 469, 898 P.2d 680, 686 (citing *Steer, Inc. v. Department of Revenue* (1990), 245 Mont. 470, 474-75, 803 P.2d 601, 603-04).

## A.

¶28. *Did the District Court err in ruling that the Montana Wage Protection Act's penalty provision applied in the instant case?*

¶29. K-Decorators argues that the District Court erred in ruling that Delaware could recover a penalty because the Wage Protection Act does not apply since K-Decorators and Delaware mutually agreed that Delaware would be paid on a commission basis. In effect, K-Decorators argues that the Wage Protection Act does not protect employees who are paid on a commission basis. We disagree.

¶30. This Court's function in construing and applying statutes is to effectuate the legislature's intent. To determine legislative intent, we first look to the plain meaning of the words used in the statute. If the legislature's intent can be determined by the plain language of the words used, we may not go further and apply other means of interpretation. It is only when the intent cannot be determined from the language of the statute that we will examine legislative history. *Skinner Enterprises v. Board of Health* (1997), 286 Mont. 256, 274, 950 P.2d 733, 744 (quoting *Thomas Brothers v. Cargill, Inc*. (1996), 276 Mont. 105, 110, 915 P.2d 226, 229).

¶31. In support of its argument that the Wage Protection Act does not protect employees who are paid on a commission basis, K-Decorators relies on this Court's decision in *McBride v. School Dist. No. 2* (1930), 88 Mont. 110, 290 P. 252. In that case, this Court looked to the legislative intent underlying the Wage Protection Act

and stated that Montana's statute governing wage payments and the statute mandating a penalty for failing to comply with the statute governing wage payments "were intended only to apply to the semi-monthly payment of wages due from all 'employers of labor . . . .'" *McBride*, 88 Mont. at 117, 290 P. at 255 (citing §§ 3084 and 3085, RCM (1921)).

¶32. Notwithstanding this Court's statement in *McBride*, we reject K-Decorators' argument because the plain language of the Wage Protection Act, which has been substantially amended since *McBride* was decided, shows that its broad scope covers employees who are paid on a commission basis. Section 39-3-201(7), MCA, defines "wages" as

*any money due an employee from the employer or employers*, whether to be paid by the hour, day, week, semimonthly, monthly, or yearly and shall include bonus, piecework, tips, and gratuities of any kind.

(Emphasis added.) Since "wages" are "any money due an employee from an employer," earned commissions fall within the Wage Protection Act's definition of "wages." Thus, the Wage Protection Act is sufficiently broad to protect employees who are paid on a commission basis. As a result, an employer who fails to pay an employee his or her earned commissions in accordance with the Wage Protection Act is subject to § 39-3-206(1), MCA, which provides that an employer who fails to pay an employee as provided by the Wage Protection Act must be assessed a penalty based on the amount of wages which are due and unpaid.

¶33. The policy underlying the Wage Protection Act also supports our conclusion that it protects employees who are paid on a commission basis. In *Como v. Rhines* (1982), 198 Mont. 279, 285-86, 645 P.2d 948, 951-52, this Court stated:

The policy of the [Wage Protection Act] is to aid an employee in the prompt collection of *compensation* due him and to discourage an employer from using a position of economic superiority as a lever to dissuade an employee from promptly collecting his agreed upon *compensation*. . . .

(emphasis added) (quoting *State ex rel. Nilsen v. Oregon State Motor Assoc.* (1967), 248

Or. 133, 432 P.2d 512, 515). Because commissions are one form of compensation, it is clear that this underlying policy supports our holding that the Wage Protection Act protects employees who are paid on a commission basis.

**¶34. In sum, the Wage Protection Act's plain language and its underlying policy show that it protects employees who are paid on a commission basis. Accordingly, we affirm the District Court's ruling that the Wage Protection Act applied in the case at bar.**

## B.

**¶35.** *Did the District Court err in ruling that the Wage Protection Act only allowed Delaware to recover a penalty on commissions which K-Decorators owed Delaware on his last day of employment and not paid within three days thereafter?*

**¶36. Delaware argues that the District Court erred in ruling that he could only recover a penalty for wages which K-Decorators owed Delaware on his last day of employment which K-Decorators did not pay within three days. Delaware relies on our decision in *Craver v. Waste Mgt. Partners of Bozeman* (1994), 265 Mont. 37, 874 P.2d 1, and argues that he was entitled to recover a penalty for wages which became due during the eighteen-month period after his last day of employment with K-Decorators. We disagree.**

**¶37. Section 39-3-206(1), MCA, provides:**

An employer who fails to pay an employee as provided in this part or who violates any other provision of this part is guilty of a misdemeanor. A penalty must also be assessed against and paid by the employer to the employee in an amount not to exceed 110% of the wages due and unpaid.[1]

Section 39-3-207, MCA, in turn, provides:

Any employee may recover all such penalties as are provided for the violation of 39-3-206 which have accrued to him at any time within 18 months succeeding such default or delay in the payment of such wages.

In *Craver*, we stated that § 39-3-207, MCA, is an eighteen-month statute of limitations. It is "the period of time in which an employee has to file a penalty claim against the employer." *Craver*, 265 Mont. at 45, 874 P.2d at 5 (citing *Pope v. Keefer* (1979), 180 Mont. 454, 591 P.2d 206, 213).

**¶38. In the instant case, Delaware apparently contends that K-Decorators violated § 39-3-205(1), MCA (1993), which provided that "when an employee is separated from the employ of any employer, all the unpaid wages of the employee are due and payable within 3 days . . . ." In *Craver*, we explained that, since § 39-3-205(1), MCA, requires an employer to pay a terminated employee's unpaid wages within three days of termination, § 39-3-207, MCA, requires a terminated employee to file a penalty claim within eighteen months after the third day following his or her termination. *Craver*, 265 Mont. at 45, 874 P.2d at 5. Delaware argues that we held in *Craver* that wages which have accrued during the eighteen-month period after an employee is terminated are subject to the mandatory penalty in § 39-3-206(1), MCA. In *Craver*, however, we held that an employee has eighteen months after a *claim* accrues to file a penalty claim against an employer. *Craver*, 265 Mont. at 45, 874 P.2d at 5. We were not faced with, and thus did not address, the issue of whether an employee may recover a penalty on *wages* which accrue after the employee is separated from the employ of an employer. Consequently, Delaware's reliance on *Craver* is misplaced.**

**¶39. Here, since Delaware was entitled to his commissions when K-Decorators completed a project and received payment for its work, some of Delaware's commissions became due after his last day of employment with K-Decorators. Section 39-3-205(1), MCA, however, only provides a rule regarding the payment of wages which are due to an employee on his or her last day of employment. It does not provide a rule regarding wages which become due after the employee's last day of employment. Thus, as the District Court correctly reasoned, since § 39-3-201(7), MCA, states that "wages" are "any money due an employee," K-Decorators could only be penalized for violating § 39-3-205(1), MCA, for commissions which were due to Delaware on his last day of employment at K-Decorators which were not paid within three days thereafter. K-Decorators could not be penalized pursuant to §§ 39-3-205(1) and 39-3-206(1), MCA, for commissions which became due after Delaware separated from the employ of K-Decorators.**

**¶40. Accordingly, we affirm the District Court's conclusion that Delaware could only**

recover a penalty pursuant to §§ 39-3-205(1) and 39-3-206(1), MCA, for commissions which K-Decorators owed Delaware on his last day of employment and did not pay within three days thereafter.

## Issue 2.

¶41. *Did the District Court err in denying Delaware's Motion for a New Trial?*

¶42. After the jury returned its verdict, Delaware filed a motion for a new trial pursuant to Rule 59, M.R.Civ.P., and § 25-11-102(6), MCA, on the basis that there was insufficient evidence to justify the jury's verdict for $1,185.14. The District Court denied this motion reasoning that Delaware showed in his motion how the jury could have reached its verdict based on the testimony and evidence introduced at trial.

¶43. A district court may grant a motion for a new trial if there is insufficient evidence to justify the jury's verdict. Section 25-11-102(6), MCA. The decision to grant or deny a new trial is in the sound discretion of the district court judge and will not be overturned unless there is a showing that the judge manifestly abused that discretion. *McGillen v. Plum Creek Timber Co.,* 1998 MT 193, ¶ 15, 994 P.2d 18, ¶ 15, 55 St.Rep. 808, ¶ 15 (citing *Geiger v. Sherrodd, Inc.* (1993), 262 Mont. 505, 508, 866 P.2d 1106, 1108 and *Henrichs v. Todd* (1990), 245 Mont. 286, 291, 800 P.2d 710, 713). If there is conflicting evidence on an issue, it is an abuse of a district court's discretion to grant a new trial on that issue on the basis that there is insufficient evidence to justify the jury's verdict. *Thompson v. City of Bozeman* (1997), 284 Mont. 440, 442, 945 P.2d 48, 49 (citing *Gass v. Hilson* (1990), 240 Mont. 459, 462, 784 P.2d 931, 933).

¶44. Our review of a district court's denial of a motion for a new trial on the grounds that the jury's verdict was not supported by substantial evidence is limited; we review the verdict only to determine whether substantial evidence exists to support it. *See Buhr on Behalf of Lloyd v. Flathead County* (1994), 268 Mont. 223, 245, 886 P.2d 381, 394 (citing *Weber v. State* (1992), 253 Mont. 148, 156, 831 P.2d 1359, 1364). *See also C. Haydon Ltd. v. Montana Min. Properties, Inc.* (1997), 286 Mont. 138, 151, 951 P.2d 46, 54 (stating that "[a]n attack upon a jury verdict as not supported by the evidence is proper only when there is a complete absence of any credible evidence in support of the verdict.") We do not retry the case to determine whether we agree or

disagree with the jury's verdict. *See Barnes v. United Industry, Inc*. (1996), 275 Mont. 25, 33, 909 P.2d 700, 705. Moreover, we will consider all of the evidence and all of the inferences drawn therefrom in a light most favorable to the party arguing that the verdict should be upheld. *C. Haydon Ltd*., 286 Mont. at 151, 951 P.2d at 54.

¶45. In the instant case, the District Court denied Delaware's motion reasoning that Delaware showed in his motion for a new trial how the jury could have reached its verdict based on the evidence and testimony introduced at trial. Delaware asserts that the District Court "misse[d] the point" of his argument because he showed that the jury improperly calculated its verdict based on the testimony and evidence introduced at trial. In support of his argument that the jury improperly calculated its verdict, Delaware points out that K-Decorators' expert testified that the company owed Delaware more than the amount that the jury awarded, K-Decorators' attorney stated in his opening statement and in his closing argument that K-Decorators owed Delaware more than what the jury awarded Delaware, and that the District Court stated, after listening to K-Decorators' opening statement, that the jury "will have to bring in a verdict of at least 7,000 some odd dollars."

¶46. In support of his argument, Delaware cites this Court's decision in *Tappan v. Higgins* (1989), 240 Mont. 158, 783 P.2d 396. In *Tappan*, the jury awarded plaintiff damages for past wage loss in an amount less than the amount that the defendant's expert testified that the plaintiff lost. In addition, the jury did not award the plaintiff damages for future wage loss even though the evidence introduced at trial clearly supported such an award and that the jury's verdict for medical expenses was unsubstantiated by the evidence. In *Tappan*, we stated that "only in rare cases should a jury verdict be set aside and a new trial granted." *Tappan*, 240 Mont. at 160, 783 P.2d at 397. We also stated that while the amount of damages awarded is within the province of the jury, it is not given carte blanche. *Tappan*, 240 Mont. at 160, 783 P.2d at 397 (citing *Sanders v. Mount Haggin Livestock Co.* (1972), 160 Mont. 73, 89, 500 P.2d 397, 406). Because there were "some glaring discrepancies" between the evidence introduced at trial and the jury's verdict, we affirmed the grant of a motion for a new trial on the grounds that there was insufficient evidence to justify the jury's verdict. *Tappan*, 240 Mont. at 164, 783 P.2d at 399.

¶47. Delaware contends that the case at bar is identical to the situation in *Tappan* because K-Decorators introduced evidence and testimony which showed that it owed Delaware more than the amount that the jury awarded Delaware. Delaware points

out that K-Decorators' expert witness testified that K-Decorators owed Delaware $68,112.58 for unpaid wages and that Judson's testimony established that K-Decorators owed Delaware an additional $1,000 for an unpaid bonus. Delaware then explains that K-Decorators introduced evidence and testimony that K-Decorators paid $27,079.42 on behalf of Delaware which he did not pay back and that it paid Delaware $34,190 in commissions which were not recorded in K-Decorators' books. Thus, Delaware argues that, if the jury believed the entirety of K-Decorators' presentation of testimony and evidence, its verdict should have been at least $8,133.16. Delaware supports this conclusion by pointing out that K-Decorators' trial attorney argued to the jury in his closing argument to return a verdict for Delaware in the amount of $8,133.16.

¶48. Notwithstanding Delaware's argument, the case at bar is unlike *Tappan*. In *Tappan*, our rationale for affirming the district court's decision that the verdict was not supported by the evidence was that the testimony and evidence overwhelmingly demonstrated that Tappan was entitled to damages in excess of the jury's verdict. In the case at bar, however, the record shows that conflicting testimony and evidence was admitted as to the amount of unpaid wages that K-Decorators owed Delaware. Even though K-Decorators' expert witness testified that K-Decorators' books showed that it owed Delaware $68,112.58 in unpaid wages, Delaware's expert witness, Jerry Hansen (Hansen), testified that K-Decorators' books showed that it owed Delaware only $61,454.56 for unpaid wages.

¶49. Delaware, however, contends that the jury improperly calculated its verdict by improperly "mixing" the evidence and testimony introduced at trial. Delaware states that the jury improperly calculated its verdict by crediting K-Decorators twice for money that it spent on a Lincoln Continental that Delaware drove while he worked for K-Decorators. Delaware explains that the jury reached its verdict by adding the amount of wages that Hansen testified that K-Decorators owed Delaware to the value of a bonus that K-Decorators owed Delaware and then subtracting payments made by K-Decorators on behalf of Delaware which he did not pay back and also subtracting commissions paid to Delaware which were not recorded in K-Decorators' books. Delaware contends that Hansen testified that he subtracted the payments that K-Decorators made for the Lincoln Continental in his calculation of the wages that K-Decorators owed Delaware. As a result, Delaware argues that the jury subtracted the payments made by K-Decorators for the car a second time when it computed the amount that K-Decorators owed Delaware. Delaware therefore concludes that the

jury's verdict was not supported by substantial evidence.

¶50. Resolving conflicts in the evidence, judging the credibility of the witnesses, and finding the facts, however, are acts uniquely within the province of the jury. *Moore v. Imperial Hotels, Corp.,* 1998 MT 248, ¶ 18, 967 P.2d 3832, ¶ 18, 55 St.Rep. 1023, ¶ 18, (citing *Durden v. Hydro Flame Corp.*, 1998 MT 47, ¶ 27, 955 P.2d 160, ¶ 27, 55 St.Rep. 198, ¶ 27). Here, even though the record shows that Hansen testified on cross-examination that he subtracted out payments made on behalf of Delaware on the Lincoln Continental when he computed the amount that K-Decorators owed Delaware, the record also shows that Hansen testified that, rather than subtracting out payments made on behalf of Delaware on the car, he "refunded" $6,792.57 to Delaware for money that Delaware paid on the car because Delaware argued that he should only be responsible for twenty percent of the payments made on the car because he used the car eighty percent of the time for business purposes. Since Hansen's testimony is apparently contradictory, it was within the province of the jury to judge his credibility and resolve the conflicts in his testimony. Moreover, it was within the province of the jury to consider the entirety of the testimony and evidence in determining the amount that K-Decorators owed Delaware; it was not bound to accept one party's presentation of testimony and evidence to the exclusion of the other party's presentation. Thus, we conclude that the jury did not improperly "mix" the evidence and therefore that the record shows substantial evidence to justify the jury's verdict.

¶51. Delaware also argues that the verdict was not supported by substantial evidence because K-Decorators' attorney argued to the jury that K-Decorators owed Delaware more than the amount that the jury awarded. Statements of counsel, however, are not evidence. *See State v. Ahto*, 1998 MT 200, ¶ 35, 965 P.2d 240, ¶ 35, 55 St.Rep. 851, ¶ 35. The record shows that K-Decorators argued to the jury to accept its expert's opinion concerning the amount that K-Decorators owed Delaware. The jury, however, was not bound by K-Decorators' expert's opinion. *Estate of Spicher v. Miller* (1993), 260 Mont. 504, 508, 861 P.2d 183, 186. Thus, the verdict cannot be said to be unsupported by the evidence only because K-Decorators' attorney argued to the jury to accept its expert's opinion and award Delaware more than the amount that the jury eventually awarded.

¶52. In sum, having thoroughly reviewed the record of the trial, we conclude that there is substantial evidence to justify the jury's verdict. The question is not what this

Court would have awarded. Rather, our review is limited to whether substantial evidence exists to support the jury's verdict. Accordingly, we affirm the District Court's decision to deny Delaware's Motion for a New Trial.

## Issue 3.

¶53. *Did the District Court err in granting summary judgment to K-Decorators on Delaware's wrongful discharge claim?*

¶54. The District Court granted K-Decorators summary judgment on Delaware's wrongful discharge claim ruling that K-Decorators had good cause to discharge Delaware because restructuring the company's management was a legitimate business reason. The District Court also ruled that K-Decorators' decision to restructure its management was neither false nor a pretext to discharge Delaware. Delaware contends that the District Court erred in granting summary judgment to K-Decorators because the record shows conflicting evidence as to whether K-Decorators proffered reason for discharging Delaware was false or pretextual.

¶55. Our standard of review in appeals from summary judgment rulings is *de novo*. *Motarie v. N. Mont. Joint Refuse Disposal* (1995), 274 Mont. 239, 242, 907 P.2d 154, 156 (citing *Mead v. M.S.B., Inc.* (1994), 264 Mont. 465, 470, 872 P.2d 782, 785). Summary judgment is an extreme remedy which should not be a substitute for a trial on the merits if a material factual controversy exists. *Calcaterra v. Montana Resources*, 1998 MT 187, ¶ 9, 962 P.2d 590, ¶ 9, 55 St.Rep. 762, ¶ 9 (citing *Montana Metal Buildings, Inc. v. Shapiro* (1997), 283 Mont. 471, 474, 942 P.2d 694, 696). Moreover, all reasonable inferences which can be drawn from the evidence presented should be drawn in favor of the nonmoving party. *Calcaterra*, ¶ 9 (citing *Montana Metal Buildings*, 283 Mont. at 474, 942 P.2d at 696).

¶56. When we review a district court's grant of summary judgment, we apply the same evaluation as the district court based on Rule 56, M.R.Civ.P. *Bruner v. Yellowstone County* (1995), 272 Mont. 261, 264, 900 P.2d 901, 903. We set forth our inquiry in *Bruner* as follows:

The movant must demonstrate that no genuine issue of material fact exist. Once this has been accomplished, the burden then shifts to the non-moving party to prove, by more than mere denial and speculation, that a genuine issue does exist. Having determined that

genuine issues of fact do not exist, the court must then determine whether the moving party is entitled to judgment as a matter of law. We review the legal determinations made by a district court as to whether the court erred.

*Bruner*, 272 Mont. at 264-65, 900 P.2d at 903 (citations omitted).

**¶57. To prevail under Montana's Wrongful Discharge from Employment Act, §§ 39-2-901, et seq., MCA, employees must first prove that they were discharged within the meaning of the Act.** *Kestell v. Heritage Health Care Corp.* **(1993), 259 Mont. 518, 523-24, 858 P.2d 3, 6.** *See also Clark v. Eagle Systems, Inc.* **(1996), 279 Mont. 279, 284, 927 P.2d 995, 998 (stating that the Act only applies if an employee was "discharged" or "constructively discharged"). The employee must then prove that the discharge was wrongful.** *Kestell*, **259 Mont. at 523-24, 858 P.2d at 6. A discharge is wrongful only if:**

(1) it was in retaliation for the employee's refusal to violate public policy or for reporting a violation of public policy;

(2) *the discharge was not for good cause* and the employee had completed the employer's probationary period of employment; or

(3) the employer violated the express provisions of its own written personnel policy.

Section 39-2-904, MCA (emphasis added). The Act defines "good cause" as "reasonable job-related grounds for dismissal based on failure to satisfactorily perform job duties, disruption of the employer's operation, or *other legitimate business reason*." Section 39-2-903(5), MCA (emphasis added). A "legitimate business reason" is "a reason that is neither false, whimsical, arbitrary or capricious, and it must have some logical relationship to the needs of the business." *Buck v. Billings Montana Chevrolet, Inc.* (1991), 248 Mont. 276, 281-82, 811 P.2d 537, 540.

**¶58. An employee seeking to defeat an employer's argument that the employee was discharged for a legitimate business reason at the summary judgment stage of wrongful discharge litigation must offer evidence upon which a fact-finder could determine that the reason given by the employer was false, whimsical, arbitrary or capricious, or unrelated to the needs of the business.** *See Kestell*, **259 Mont. at 526, 858 P.2d at 8 (citing** *Cecil v. Cardinal Drillings Co.* **(1990), 244 Mont. 405, 797 P.2d 232).** *See also Mysse v. Martens* **(1996), 279 Mont. 253, 262, 926 P.2d 765, 770 (stating**

that an employee seeking to defeat an employer's motion for summary judgment on the issue of good cause must offer evidence that the employer's given reason for the discharge is a pretext and not the honest reason for the discharge) (citing *Coombs v. Gamer Shoe Co.* (1989), 239 Mont. 20, 778 P.2d 885 and *Cecil*, 797 P.2d at 235). The employee cannot defeat the employer's motion for summary judgment by merely denying the employer's given reason or by speculation; he or she must show facts sufficient to raise an issue to be decided by a fact-finder. *Mysse*, 279 Mont. at 262, 926 P.2d at 770 (citing *Cecil*, 797 P.2d at 235).

¶59. K-Decorators cites *Buck* in support of its argument that it had a legitimate business reason to discharge Delaware. In *Buck*, the new owner of a car dealership terminated the plaintiff's general manager position and replaced him with a person whom the new owner had employed for a long period of time. The new owner explained that the plaintiff was discharged pursuant to a company policy which placed its long-term employees in charge of newly acquired dealerships. Instead of offering evidence to dispute the new owner's explanation, the plaintiff argued that the employer's explanation was not adequate under the Act. This Court, however, affirmed the grant of summary judgment to the employer and held that the employer's proffered reason was a legitimate business reason. *Buck*, 248 Mont. at 283, 811 P.2d at 541. We stated that, under the facts before us, to conclude otherwise would "force the new owner of a business to retain someone it did not know or perhaps even trust to manage a large dollar investment." *Buck*, 248 Mont. at 282-83, 811 P.2d at 541.

¶60. Unlike the plaintiff in *Buck*, however, Delaware does not argue that restructuring or reorganizing a business is not a legitimate business reason. Rather, he argues that the affidavits that he filed with his brief opposing K-Decorators' motion for summary judgment could lead a fact-finder to conclude that K-Decorators' proffered reason is false or pretextual. After reviewing the record, we agree with Delaware that these affidavits raise a material issue of fact as to whether K-Decorators' proffered reason was false or pretextual. The record shows that Judson testified that he removed Delaware from the sales manager position as part of a plan to reorganize and restructure K-Decorators. Similarly, Al Judson testified that he moved back to Billings to run K-Decorators as its general manager and to reorganize and restructure the "whole program" to make the company more efficient, cost effective, and profitable. Delaware, however, filed three affidavits with his brief opposing K-Decorators' motion for summary judgment from salesmen who

continued working for K-Decorators after Delaware was removed as sales manager wherein each affiant stated that he saw few, if any, changes in the sales department after Al Judson replaced Delaware as sales manager. This testimony contradicts Al Judson's testimony that he assumed K-Decorators' general manager position to restructure the "whole program" and Judson's testimony that he eliminated Delaware's sales manager position as part of a plan to restructure and reorganize K-Decorators. These affidavits are neither mere denial nor speculation; they are direct evidence that K-Decorators did not restructure or reorganize. Therefore, these affidavits are sufficient to raise a factual issue as to whether K-Decorators discharged Delaware as part of a bona fide managerial reorganization or whether K-Decorators' proffered reason is false or pretextual. Consequently, we hold that the District Court erred by granting K-Decorators summary judgment.

¶61. Accordingly, we reverse the District Court's order granting summary judgment to K-Decorators on Delaware's wrongful discharge claim and remand for further proceedings.

## Issue 4.

¶62. *Did the District Court err in awarding attorney fees and costs to Delaware?*

¶63. After the trial on Delaware's claim for unpaid wages, both parties filed memoranda of costs which included requests for attorney fees. Thereafter, the District Court conducted an evidentiary hearing on the parties' requests for costs and attorney fees. Subsequently, the District Court ruled that Delaware timely filed his memorandum of costs, taxed Delaware's costs at $165, awarded him attorney fees in the amount of $10,000, and denied K-Decorators' request for attorney fees. K-Decorators argues that the District Court erred in granting attorney fees to Delaware and in denying its request for attorney fees.

¶64. Because these issues concern questions of law, our review is whether the court's interpretation of the law is correct. *Carbon County*, 271 Mont. at 469, 898 P.2d at 686.

## A.

¶65. *Did the District Court err in ruling that Delaware timely filed his memorandum of costs?*

¶66. K-Decorators argues that Delaware is not entitled to his attorney fees or costs because he did not timely file his memorandum of costs. K-Decorators points to § 39-3-214, MCA, which states that attorney fees are to be taxed as costs, and contends that a party claiming attorney fees pursuant to § 39-3-214, MCA, must comply with § 25-10-501, MCA, which requires a party to file and serve upon the adverse party a memorandum of costs within five days after the jury returns its verdict. Since Delaware did not file his memorandum of costs within five days after the jury returned its verdict, K-Decorators asserts that the District Court erred in awarding Delaware his attorney fees and costs. We agree.

¶67. Section 25-10-501, MCA, provides:

The party in whose favor judgment is rendered and who claims his costs must deliver to the clerk and serve upon the adverse party, *within 5 days after the verdict* or notice of the decision of the court or referee or, if the entry of the judgment on the verdict or decision be stayed, then before such entry is made, a memorandum of the items of his costs and necessary disbursements in the action or proceeding, which memorandum must be verified by the oath of the party, his attorney or agent, or the clerk of his attorney, stating that to the best of his knowledge and belief the items are correct and that the disbursements have been necessarily incurred in the action or proceeding.

(Emphasis added.) It is well-established that, in cases involving a jury trial, as opposed to a bench trial, this statute requires a party to file a memorandum of costs within five days after the jury returns its verdict. *Kunst v. Pass*, 1998 MT 71, ¶ 11, 957 P.2d 1, ¶ 11, 55 St. Rep. 289, ¶ 11. *See also Rocky Mountain Ent. v. Pierce Flooring* (1997), 286 Mont. 282, 300, 951 P.2d 1326, 1337 (citing *R.H. Grover, Inc. v. Flynn Ins. Co.* (1989), 238 Mont. 278, 777 P.2d 338) ("to claim costs under § 25-10-501, MCA, the plaintiffs had five days from the date of the jury verdict to file and serve upon the adverse party a verified memorandum of costs.") A party who fails to file a timely memorandum of costs waives its right to receive its costs. *See Cenex, Inc. v. Board of Com'rs for Yellowstone County* (1997), 283 Mont. 330, 338, 941 P.2d 964, 968.

¶68. In the absence of a contractual agreement or specific statutory authority, a prevailing party may not recover attorney fees as costs. *Selvidge v. McBeen* (1988), 230 Mont. 237, 247, 750 P.2d 429, 435 (citing *State ex rel. Wilson v. Department of Natural Resources and Conservation* (1982), 199 Mont. 189, 648 P.2d 766, 769 and §

25-10-301, MCA). *Accord* § 25-10-201, MCA (stating which expenses a party may include in a bill of costs).

¶69. In *Schillinger v. Brewer* (1985), 215 Mont. 333, 697 P.2d 919, this Court addressed the issue of whether attorney fees were costs in a mechanic's lien foreclosure action. In that case, the lienee argued that costs included attorney fees. This Court disagreed and pointed out that the statutes which the lienee relied on distinguished attorney fees from costs. Moreover, these statutes did not "equate attorney fees with costs by any express provision." *Schillinger*, 215 Mont. at 337, 697 P.2d at 922. Consequently, this Court held that attorney fees are not costs in mechanic's lien foreclosure actions. *Schillinger*, 215 Mont. at 337, 697 P.2d at 922.

¶70. In contrast, § 39-3-214, MCA, states that attorney fees are "to be taxed as part of the costs in [a Wage Protection Act case]" and that a judgment for a plaintiff in a Wage Protection Act case "must include all costs reasonably incurred in connection with the proceeding, *including attorneys' fees*." (Emphasis added.) These two provisions state that costs include attorney fees and thus provide an exception to the general rule that costs do not include attorney fees. *Glaspey v. Workman* (1988), 234 Mont. 374, 377, 763 P.2d 666, 668. Therefore, unlike the statutes at issue in *Schillinger*, § 39-3-214, MCA, "equate[s] attorney fees with costs" by express provisions. Consequently, a party seeking attorney fees pursuant to § 39-3-214, MCA, must comply with the statutes governing the taxing of costs.

¶71. In the instant case, the jury returned its verdict on April 4, 1996. Hence, pursuant to § 25-10-501, MCA, Delaware was required to file his memorandum of costs on or before April 11, 1996. *See* Rule 6(a), M.R.Civ.P. Delaware, however, did not file his memorandum of costs until April 19, 1996. Because Delaware did not timely file his memorandum of costs, he waived his right to receive his costs which, under § 39-3-214, MCA, include attorney fees. *See Cenex*, 283 Mont. at 338, 941 P.2d at 968.

¶72. Accordingly, we hold that the District Court erred in ruling that Delaware timely filed his bill of costs and thus in awarding Delaware his costs and attorney fees. Therefore, we reverse and remand for further proceedings consistent with this opinion.

## B.

¶73. *Did the District Court err in denying K-Decorators' request for attorney fees?*

¶74. K-Decorators argues that the District Court erred in granting attorney fees to Delaware because Delaware was not the successful party because the jury's verdict did not exceed the amount of K-Decorators' offer of judgment. For this same reason, K-Decorators asserts that it was the successful party and thus that the District Court erred in denying its request for attorney fees. Because we have held that Delaware is not entitled to recover attorney fees because he failed to timely file his memorandum of costs, we will only address K-Decorators' argument that the District Court erred in denying its request for attorney fees.

¶75. In general, a prevailing litigant is not entitled to attorney fees absent a specific contractual or statutory provision. *Marsh v. Overland* (1995), 274 Mont. 21, 30, 905 P.2d 1088, 1093 (citing *Howell v. State* (1994), 263 Mont. 275, 868 P.2d 568, 574). Section 39-3-214(1), MCA, however, provides in pertinent part:

Whenever it is necessary for the employee to enter or maintain a suit at law for the recovery or collection of wages due as provided for by [the Wage Protection Act], *a resulting judgment must include a reasonable attorney's fee in favor of the successful party*, to be taxed as part of the costs in the case.¶76. K-Decorators argues that it was the successful party under § 39-3-214(1), MCA, because K-Decorators' offer of judgment was $31,314.86 greater than the jury's verdict for $1,185.14. Consequently, K-Decorators argues that the District Court erred in denying its requests for attorney fees.

¶77. An offer of judgment in an amount greater than the jury's verdict is a factor that a court should consider when determining which party is the successful or prevailing party for the purpose of attorney fees. *Doig v. Cascaddan* (1997), 282 Mont. 105, 113, 935 P.2d 268, 272. Nevertheless, we reject K-Decorators' argument that it was the successful party under § 39-3-214(1), MCA, because it is unclear from the record whether K-Decorators offered to have judgment taken against it on Delaware's unpaid wage claim or on his wrongful discharge claim. Although K-Decorators' offer of judgment states that it is offering to have judgment taken against it "in the amount of $32,500 for [Delaware's] wage claims" and cites the Wage Protection Act's attorney fees provision, it also states that K-Decorators is offering to have judgment taken against it on Count I of Delaware's Complaint

which alleged wrongful discharge. Moreover, K-Decorators' offer of judgment states that "[t]his offer is made without reference to, and without prejudice to, Plaintiff's claims [for unpaid wages]." Because K-Decorators' offer of judgment is ambiguous as to whether it applied to Delaware's unpaid wage claim or to his wrongful discharge claim, it is immaterial to determining which party prevailed in the trial on Delaware's claim for unpaid wages. Thus, we conclude that K-Decorators is not the successful party on the grounds that the jury verdict did not exceed K-Decorators' offer of judgment. Therefore, we hold that the District Court did not err in denying K-Decorators' request for attorney fees.

¶78. Accordingly, we affirm the District Court's denial of K-Decorators' request for attorney fees.

Issue 5.

¶79. *Did the District Court err in refusing to dismiss Delaware's claim against Judson, individually?*

¶80. K-Decorators contends that the District Court erred when the court denied its second motion to dismiss wherein it moved to dismiss Delaware's claim against Judson individually. Specifically, K-Decorators argues that Rule 12(b), M.R.Civ.P., required the District Court to treat its second motion to dismiss as a motion for partial summary judgment and that the court should have granted summary judgment in favor of Judson on the grounds that a corporate officer cannot be personally liable for acts taken on behalf of the corporation in furtherance of corporate goals, policies and business interests. In response, Delaware points out that the parties stipulated before trial that Judson is a proper defendant. In spite of the stipulation, K-Decorators argues that Judson's stipulation did not waive its right to appeal the issue of whether the District Court erred in denying its motion to dismiss Delaware's claim against Judson individually. We disagree.

¶81. This Court will not address an issue on appeal concerning a question of law or fact which a party raises after stipulating to that law or fact. *Topco, Inc. v. State, Dept. of Highways* (1996), 275 Mont. 352, 358, 912 P.2d 805, 808 (citing *Penn v. Burlington Northern, Inc.* (1980), 185 Mont. 223, 228, 605 P.2d 600, 603-4). *See also Westland Enterprises, Inc. v. Boyne, USA, Inc.* (1989), 237 Mont. 186, 191, 772 P.2d

309, 312, (citing *In re Marriage of Prevost* (1987), 225 Mont. 116, 731 P.2d 344).

¶82. In the instant case, the stipulation states that Judson agreed that he was a proper party to the case. Even so, K-Decorators argues that Judson did not waive his right to appeal the District Court's decision denying K-Decorators' motion to dismiss Delaware's claim against Judson individually because the stipulation shows that Judson only agreed that he was a proper defendant to streamline the issues for trial. However, Judson's reason for stipulating that he is a proper defendant in this case is immaterial; we will not address an issue on appeal concerning a question of law or fact which a party raises after stipulating to that law or fact regardless of the party's reason for stipulating. Thus, by stipulating that he is a proper party to the case, Judson waived his right to appeal whether the District Court erred by denying K-Decorators' motion to dismiss Delaware's claims against Judson individually.

¶83. Accordingly, we will not address the issue of whether the District Court erred in denying K-Decorators' motion to dismiss Delaware's claims against Judson.

### Issue 6.

¶84. *Did the District Court err in imposing discovery sanctions on K-Decorators?*

¶85. The District Court imposed discovery sanctions on K-Decorators pursuant to Rule 37(b)(2), M.R.Civ.P., for failing to comply with the court's order to serve answers to Delaware's first set of interrogatories within fifteen days of the date of the order. Although K-Decorators acknowledges that it did not comply with the District Court's order, it argues that the court abused its discretion in imposing discovery sanctions.

¶86. This Court reviews a district court's imposition of discovery sanctions to determine whether the court abused its discretion. *McKenzie v. Scheeler* (1997), 285 Mont. 500, 506, 949 P.2d 1168, 1172 (citing *Smith v. Butte-Silver Bow County* (1996), 276 Mont. 329, 916 P.2d 91, 93). *See also Sullivan v. Sisters of Charity* (1994), 268 Mont. 71, 77, 885 P.2d 488, 492 (citing *Eisenmenger v. Ethicon, Inc.* (1994), 264 Mont. 393, 402, 871 P.2d 1313, 1319). We generally defer to the district court's decision "because the trial court is in the best position to know whether parties are disregarding the rights of opposing parties in the course of litigation and which sanctions for such conduct are most appropriate." *McKenzie*, 285 Mont. at 500, 949

P.2d at 1172.

¶87. Since 1981, we have consistently stated that a party's abuse of discovery procedures which results in unnecessary delay of a case should not be dealt with leniently. *Morris v. Big Sky Thoroughbred Farms, Inc.*, 1998 MT 229, ¶ 13, 965 P.2d 890, ¶ 13, 55 St.Rep. 975, ¶ 13 (citing *Owen v. F.A. Buttrey Co.* (1981), 192 Mont. 274, 278, 627 P.2d 1233, 1235). More to the point, we have stated that those who abuse the discovery rules should be punished rather than encouraged repeatedly to cooperate in the discovery process. *McKenzie*, 285 Mont. at 506, 949 P.2d at 1171 (citing *Smith*, 276 Mont. at 332, 916 P.2d at 92-93). The policy behind judicial intolerance of discovery abuses is the concern over crowded dockets and the need to maintain fair and efficient judicial administration of pending cases. *McKenzie,* 285 Mont. at 506, 949 P.2d at 1171 (citing *Smith*, 916 P.2d at 92).

¶88. Rule 37, M.R.Civ.P., governs sanctions for failure to comply with discovery procedures. Rule 37(b)(2), M.R.Civ.P., provides in pertinent part that "[i]f a party . . . fails to obey an order to provide or permit discovery, . . . the court in which the action is pending may make such orders in regard to the failure as are just . . . ." Moreover, Rule 37(b)(2), M.R.Civ.P., states that "[t]he court *shall* require the party failing to obey the order or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust." (Emphasis added.)

¶89. In short, Rule 37(b)(2), M.R.Civ.P., is strict; a district court must sanction those who disobey a discovery order by ordering them to pay the other party's reasonable expenses, including attorney fees, which arise because of the failure to comply with a discovery order, unless the court finds that the failure to comply with the order was substantially justified, or that other circumstances make an award of expenses unjust. The party attempting to avoid Rule 37(b)(2), M.R.Civ.P., sanctions has the burden of proving that its failure to comply with the order was "substantially justified," or that other circumstances make such an award unjust. *See Hyde & Drath v. Baker* (9th Cir. 1994), 24 F.3d 1162, 1171 (citing *Falstaff Brewing Corp. v. Miller Brewing Co.*, (9th Cir. 1983), 702 F.2d 770, 784) (interpreting the identical federal rule).

¶90. In the instant case, therefore, the District Court was required to sanction K-

Decorators for failing to comply with its order by awarding Delaware his reasonable expenses, including attorney fees, unless K-Decorators proved that it was substantially justified in failing to comply with the court's order or that other circumstances made an award of reasonable expenses unjust. Thus, our review in this case is whether the District Court abused its discretion by not ruling that K-Decorators' failure to comply with the court's order was substantially justified or that other circumstances made an award of sanctions unjust.

¶91. K-Decorators argues that the District Court erred in sanctioning K-Decorators for failing to comply with the court's order for several reasons. We construe K-Decorators' arguments to be that its failure to comply with the District Court's order was substantially justified or that other circumstances existed that made the sanctions unjust.

¶92. First, K-Decorators contends that the District Court should not have sanctioned it because its response to Delaware's interrogatories was late because of the "rush of the Christmas season and the crunch of counsel's schedule." This Court has held, however, that an attorney's busy schedule does not constitute "excusable neglect" under Rule 5, M.R.Civ.P. *In re Marriage of Bahm* (1987), 225 Mont. 331, 333, 732 P.2d 846, 847-48. Similarly, an attorney's busy schedule is not substantial justification for failing to comply with a district court's order nor is it a circumstance that makes an imposition of sanctions unjust under Rule 37(b)(2), M.R.Civ.P. As stated by the First Circuit Court of Appeals, "[m]ost attorneys are busy most of the time and they must organize their work so as to be able to meet the time requirements of matters they are handling or suffer the consequences." *Pinero Schroeder v. Federal National Mortgage Ass'n* (1st Cir. 1978), 574 F.2d 1117, 1118. In sum, neither the "rush" of the holiday season nor the "crunch" of K-Decorators' attorney's schedule constitutes substantial justification for failing to comply with the District Court's order nor are they circumstances which make the sanction unjust.

¶93. Second, K-Decorators asserts that the District Court erred in imposing sanctions because its failure to comply with the court's order was not the result of an intentional disregard of Delaware's discovery rights nor was the failure to comply an attempt to prevent discovery. In *McKenzie*, however, we ruled that a party should be sanctioned for an attitude of unresponsiveness to the discovery process regardless of their intent behind that attitude. *McKenzie*, 285 Mont. at 508, 949 P.2d at 1172 (citations omitted). We also pointed out that refusing to provide discovery

unnecessarily delays cases and is the precise reason behind the availability of sanctions pursuant to Rule 37, M.R.Civ.P. *McKenzie*, 285 Mont. at 516, 949 P.2d at 1177. Because K-Decorators' intent behind its failure to comply with the District Court's order is immaterial and because its failure to comply with the court's order unnecessarily delayed the case, these proffered reasons are neither substantial justification for failing to comply with the court's order nor are they circumstances which make the sanctions unjust.

¶94. Finally, K-Decorators contends that the District Court erred in imposing the sanctions because the delay was insignificant and because Delaware did not express an immediate need for answers. K-Decorators' argument that the District Court erred in imposing sanctions because the delay was insignificant is without merit. The severity of a party's failure to comply with a discovery order is a factor that is to be considered only when determining an appropriate sanction under Rule 37(b)(2), M.R. Civ.P. *See McKenzie,* 285 Mont. at 516, 949 P.2d at 1177-78. Rule 37(b)(2), M.R.Civ. P., requires a district court to, at the least, sanction a party who has disobeyed a discovery order by ordering that party to pay the other party's reasonable expenses caused by the party's failure to comply with the discovery order. In the instant case, K-Decorators violated a discovery order and received the lightest sanction allowed by Rule 37(b)(2), M.R.Civ.P. Moreover, the severity of a party's failure to comply with a discovery order cannot constitute substantial justification for failing to comply with a district court's order nor is it, under the facts of the instant case, a circumstance which makes the sanctions unjust.

¶95. K-Decorators' argument that it should not be sanctioned because Delaware never expressed an immediate need for the answers is equally without merit. Delaware did not need to ask K-Decorators for the answers after the District Court ordered K-Decorators to answer the interrogatories. Thus, the fact that Delaware did not express an immediate need for answers did not substantially justify K-Decorators' failure to comply with the District Court's order nor is it a circumstance which makes the sanctions unjust.

¶96. In sum, Rule 37(b)(2), M.R.Civ.P., required the District Court to award Delaware his reasonable expenses, including his attorney fees, caused by K-Decorators' failure to comply with the District Court's order to answer Delaware's first set of interrogatories within fifteen days of the date of the order, unless K-Decorators proved that its failure to comply with the order was substantially justified

or that other circumstances made an award of sanctions unjust. We conclude that K-Decorators did not prove that it was substantially justified in disobeying the District Court's order nor did it prove that other circumstances made the sanctions unjust.

¶97. Accordingly, we affirm the District Court's imposition of discovery sanctions on K-Decorators pursuant to Rule 37(b)(2), M.R.Civ.P.

¶98. Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

/S/ JAMES C. NELSON

We Concur:

/S/ J. A. TURNAGE

/S/ KARLA M. GRAY

/S/ WILLIAM E. HUNT, SR.

/S/ W. WILLIAM LEAPHART

1. [1] In the instant case, Delaware's last day at K-Decorators was September 20, 1993. On that day the maximum penalty under § 39-2-206, MCA, was 100 per cent of the wages due and unpaid. On October 1, 1993, the maximum penalty increased to 110 per cent. Consequently, the District Court ruled that Delaware could recover a maximum penalty of 100 per cent of the wages due and unpaid.