No. 84-386

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

---

JAMES P. ROBERTS, et ux.,

        Plaintiffs and Respondents,

  -vs-

MISSION VALLEY CONCRETE INDUSTRIES,
INC., a Montana corporation,

---

APPEAL FROM:  District Court of the Twentieth Judicial District,
              In and for the County of Lake,
              The Honorable James B. Wheelis, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

           French, Mercer, Grainey & Duckworth; John A. Mercer,
           Polson, Montana

      For Respondent:

           Terry Wallace, Missoula, Montana

---

                      Submitted on Briefs: May 9, 1986

                            Decided:  July 17, 1986

Filed:  JUL 17 1986

                                Ethel M. Harrison
                                Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from a judgment issued by the District Court, Fourth Judicial District, in and for Lake County, Montana. After a bench trial, the Hon. James B. Wheelis awarded plaintiff damages, including punitive damages and attorney fees. We affirm in part and reverse in part.

In 1979, Roberts and Mission Valley Concrete, through its vice-president, Warren Harding, entered into a written contract for the modification of three barns on Roberts' property near St. Ignatius, Montana, into so-called water-flush barn systems for raising hogs. A sewage lagoon also was to be constructed. A schematic drawing of the proposed lagoon was prepared by the Soil Conservation Service. Roberts designed the barns. He selected Harding's company to do the work by looking in the telephone book for area concrete dealers.

Harding had built hog barns before. He did not have experience constructing water-flush hog barns, however. The two men discussed Roberts diagram and Harding indicated he could do the job.

A major source of contention between Roberts and Mission Valley concerns the construction of the flush system. The theory behind the system is that gutters allow the hogs' waste to be flushed out of the barns by use of water which partially dissolves the waste and moves it down the gutter to sumps where it is then pumped into a lagoon. The plans which Roberts gave to Harding called for the slope of the gutters to be 3 inches over the 75 foot length of the gutters. Bob Atkinson, the job superintendent, increased the slope to almost 20 inches over the 75 foot length of the gutters.

- 2 -

Consequently, the water gushed down the gutters, and rather than dissolving the waste, merely rushed over it.

The inside of the gutters was not smooth, resulting in high spots and low spots where water and waste "pool" instead of flowing. Atkinson attempted to make the gutter smooth by applying grout, but did not finish the grouting work. The freezing and thawing of the waste and water has eliminated most of the grout which was applied. The floor of the gutters has fallen away from the walls causing the gutters to leak rather than holding the flush water for two to three days as Roberts intended. Roberts testified the system does not work at all--that he spends two hours a week on each gutter, hosing out the solids.

No reinforcing steel was put in the barns' floors or under the gutters. Flush water flows under slabs of the barns, causing increased cracking. At least one sump has separated from a side wall.

The sewage lagoon does not have the agreed capacity. Roberts must pump it out every three months instead of twice yearly as would be necessary had it been built according to specifications.

When the job was completed, Mission Valley billed Roberts $9,505.00. Roberts paid $7,000.00, testifying he believed that was all he owed. Mission Valley credited Roberts $174.80 for the rebar (reinforcing steel) which was left out of the construction and then filed a lien against him for $2,330.20 for the balance of the bill.

Roberts filed an amended complaint alleging fraud and misrepresentation and asking for damages. The second count of the complaint alleged Mission Valley deliberately and maliciously asserted a fraudulent mechanic's lien against his

property. Following a bench trial, the court found for Roberts and awarded damages including punitive damages and attorney fees. Mission Valley appeals.

Three issues are presented for review:

1. Whether the findings of fact, conclusions of law, and judgment are supported by substantial credible evidence.

2. Whether attorney fees may be awarded where there is neither statutory authority nor an agreement between the parties regarding attorney fees.

3. Whether representations constitute fraud where there is no finding that the party making the representations knew they were false at the time they were being made.

We will consider the issue of fraud first. The statutory definition of fraud is found at § 28-2-405, MCA:

> Actual fraud, within the meaning of this part, consists in any of the following acts committed by a party to the contract or with his connivance with intent to deceive another party thereto or to induce him to enter into the contract:
>
> (1) the suggestion as a fact of that which is not true by one who does not believe it to be true;
>
> (2) the positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true;
>
> (3) the suppression of that which is true by one having knowledge or belief of the fact;
>
> (4) a promise made without any intention of performing it; or
>
> (5) any other act fitted to deceive.

Fraud is more than merely making a promise which the promisor fails to keep. Svennungsen v. Svennungsen (1974), 165 Mont. 161, 169, 527 P.2d 640, 644; Gallatin Trust & Savings Bank v. Henke (1969), 154 Mont. 170, 175, 461 P.2d 448, 450. Actionable fraud requires that one prove the maker of the promise had no intention of performing it when he made

- 4 -

it. Howe v. Messimer (1929), 84 Mont. 304, 313-314, 275 P. 281, 283.

Roberts claims he was defrauded by Mission Valley. The record shows that Roberts contacted Mission Valley about modifying three barns on his property to be used for raising hogs. He had designed what he wanted and showed the design to Warren Harding. Harding had had experience in constructing hog barns, but not the water-flush system Roberts had designed. Nevertheless, Harding represented to Roberts he could do what Roberts wanted.

Harding testified he could do the concrete work to Roberts' specifications, that he intended to do a good job, and that he did do a good job. He held himself out as capable of doing work in a skilled, professional manner. It is clear his performance was not consistent with professional standards.

Rule 52(a), M.R.Civ.P., says in pertinent part:

In all actions tried upon the facts without a jury . . ., the court shall find facts specially and state separately its conclusions of law thereon, . . . Findings of fact shall not be set aside unless clearly erroneous,. . .

This Court's function in reviewing findings of fact in a civil action tried by the district court without a jury is not to substitute its judgment in place of the trier of facts but rather it "is confined to determining whether there is substantial credible evidence to support the findings of fact and conclusions of law . . ." In determining whether the trial court's findings are supported by subtantial evidence, this Court must view the evidence in the light most favorable to the prevailing party [citing cases]. Cameron v. Cameron (1978), 179 Mont. 219, 227-228, 587 P.2d 939, 944.

There is testimony showing Harding knowingly made false representations that were material, and promises he knew he could not keep. Roberts testified that at the time he entered into the agreement with Mission Valley he had "total faith in Warren to be able to do the job that he said he was going to do." Roberts had a right to rely on Harding, and was injured because of this reliance. This being so, the court is not in error to find fraud.

There is conflicting evidence in the findings. The findings, however, must be clearly erroneous to be set aside. Rule 52, M.R.Civ.P. We find no clear error constituting abuse of discretion, further the district court has the benefit of seeing and hearing witnesses testify.

Roberts claims he is entitled to attorney's fees. It long has been the rule in Montana that absent either statutory authority or agreement between the parties, attorney's fees are not awarded. Bossard v. Sullivan (Mont. 1983), 670 P.2d 1389, 1391, 40 St.Rep. 1733, 1735. Roberts is not entitled to attorney's fees.

The judgment of the District Court awarding damages is affirmed, and reversed as to attorney's fees.

John Conway Harrison
Justice

We concur:

John C. Sheehy

_____
William E. Hunt

_____
Frank B. Morrison

_____
D. C. Gulbrandson

Justices

_____
The Honorable Henry Loble,
Judge of the District Court,
sitting for Mr. Chief Justice
J. A. Turnage