No. 99-113

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 120

299 Mont. 463

1 P. 3d 940

---

REIER BROADCASTING COMPANY, INC.,

a Montana corporation,

Defendant, Appellant, and Cross-Respondent

v.

GRETA B. REIER,

Plaintiff, Respondent, and Cross-Appellant

---

APPEAL FROM: District Court of the Eighteenth Judicial District,

In and for the County of Gallatin,

The Honorable Thomas A. Olson, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

James M. Kommers, Ralph W. Steele, Kommers, Steele & Bentson, Bozeman, Montana

For Respondent:

Karl P. Seel, Bozeman, Montana

Submitted on Briefs: July 22, 1999

Decided: May 4, 2000

Filed:

_____

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 Reier Broadcasting Company, Inc. (RBC) appeals from a judgment of the Eighteenth Judicial District Court, Gallatin County. The District Court awarded Greta B. Reier (Greta) $3,413.17, concluding that she was owed a statutorily imposed penalty of fifty-five percent on $6,205.77 of unpaid wages. The court also awarded Greta her attorney's fees and costs. Greta cross-appeals the court's determination of the penalty award.

¶2 We affirm in part, reverse in part, and remand.

¶3 RBC raises the following issue, which incorporates Greta's cross-appeal issues:

1. Did the District Court err in awarding a fifty-five percent penalty and attorney's fees to Greta Reier for unpaid wages even though she was married to William Reier, the sole owner of RBC, and her claim was thus excluded by § 39-3-406(1)(d), MCA, from coverage under Montana's wage protection statutes?

## Factual and Procedural Background

¶4 This dispute arose as a result of William Reier (William), the sole shareholder, CEO, and President of RBC, agreeing to pay his spouse, Greta, a retroactive salary for her employment at one of his radio stations.

¶5 In October of 1995, Greta went to work for RBC as a "traffic system" manager, after an

employee of RBC left the position. Her role was to coordinate the "traffic" of what and when various commercials and programs would be aired. Initially, she was not paid hourly wages or a salary. Apparently, her employment was temporary, until a permanent full-time traffic system manager could be found. RBC contends that her employment was part of a training plan, whereby Greta would eventually become a consultant to future traffic system managers at all of RBC's radio stations. Shortly after Greta's employment began, in November of 1995, RBC hired a person to permanently fill this position, but subsequently discharged the person for unsatisfactory job performance within one month. RBC was unable to locate a satisfactory replacement. Thus, Greta retained the position.

¶6 Ten months after Greta's employment with RBC commenced, William offered to pay her a monthly salary of $1,600, and agreed she should be paid retroactively back to the first day she started working.

¶7 As a result of their discussion, William prepared a "Memo of Understanding" on September 18, 1996. The memo provided that RBC owed Greta "salary for work performed from October, 1995 through July, 1996." The memo stated that the total due to Greta for this 10-month period was $16,000, or $1,600 a month, and was payable "according to a mutually agreeable schedule, but in no case later than August 1, 1997."

¶8 Greta continued to work at the radio station until December of 1996, during which time she received monthly wages, which are not in dispute. By the end of the year, however, William and Greta commenced the process of dissolving their marriage, and she left her position with the radio station. She had not received any compensation for the back-wages at that time.

¶9 RBC paid Greta "advances" or "loans" of $1,296.33 on February 14, 1997, $1,296.33 on March 13, 1997, and $2,592.66 on March 25, 1997. These payments represented four of the 10 monthly payments of $1,600, less estimates for ordinary state and federal withholdings.

¶10 On May 15, 1997, however, RBC altered its salary payment calculation. In addition to tax withholdings, RBC chose to deduct $511.70 for her use of a vehicle that RBC was apparently subleasing from William, $40.00 as an estimate for monthly licence fees for the vehicle, and an additional $100.00 for monthly insurance premiums. After making these vehicle deductions, along with state and federal withholdings, Greta's $1,600 monthly salary dwindled to a take-home sum of $644.63. Thus, RBC had now allegedly made good

on five of the 10 payments.

¶11 On June 6, 1997, Greta filed a complaint against RBC for unpaid wages, plus penalties for failure to pay wages under Montana's wage protection statute, § 39-3-206, MCA.

¶12 But RBC was not finished with fine-tuning its payroll deduction plan. On July 17, 1997, another payment was made to Greta in the amount of $927.58. This sum represented Greta's take-home for two month's salary--$463.79 per month--less deductions for withholdings and the vehicle expenses. Now, RBC had allegedly made good on seven of the 10 payments.

¶13 With the lawsuit pending, however, RBC's purse strings loosened. In calculating its final obligation to Greta, RBC decided to restore the vehicle deductions. RBC determined that as of August 1, 1997, it owed Greta $6,205.77, which was determined by deducting 10 month's worth of state and federal withholdings from the original obligation of $16,000, and then further deducting the sums paid to her between February and July. On August 1, 1997, RBC tendered a check to Greta for this amount as an offer of settlement, which she did not cash, pending the outcome of this litigation.

¶14 On April 28, 1998, the District Court granted Greta's motion for summary judgment on the issue of whether RBC owed her unpaid wages. The remaining issues of the amount of wages still owed and a potential statutory penalty were reserved for trial, which took place May 14, 1998.

¶15 At trial, the parties agreed that Greta had accepted net payments in the amount of $6,757.53, and that $6,205.77 (net) was the remaining amount owed to her. The court ordered RBC to tender a check for $6,205.77 to Greta's attorney by 5 p.m. that day. RBC complied with the order.

¶16 In assessing whether a penalty was appropriate, the court reasoned that because RBC had admitted to owing Greta a wage, and that she was in fact employed by RBC from October 1995 through July 1996, the timely payment of wages must be governed by wage and wage protection statutes. The court concluded that pursuant to § 39-3-205, MCA, the remaining sum owed, $6,205.77, was due to Greta no later than January 31, 1997. This statute provides that when an employee separates from the employ of any employer, all the unpaid wages of the employee are due and payable on the next regular payday for the

pay period during which the employee was separated from employment, or 15 days from the date of separation from employment, whichever occurs first. The court determined that RBC had therefore failed to pay Greta as provided for by law.

¶17 Although concluding that a penalty was appropriate, the court declined to award the maximum penalty of 110 percent, as provided under § 39-3-206, MCA, and instead awarded Greta $3,413.17, which was 55 percent of the remaining unpaid wages. On December 22, 1998, the court also awarded Greta $6,194.24 for her attorney's fees and costs pursuant to § 39-3-214, MCA, following a hearing on December 1, 1998.

¶18 Both parties now appeal the judgment of the District Court.

## Standard of Review

¶19 This Court reviews the findings of a trial court sitting without a jury to determine if the court's findings are clearly erroneous. Rule 52(a), M.R.Civ.P. A district court's findings are clearly erroneous if they are not supported by substantial credible evidence, if the trial court has misapprehended the effect of the evidence, or if a review of the record leaves this Court with the definite and firm conviction that a mistake has been committed. *Whalen v. Taylor* (1996) 278 Mont. 293, 299, 925 P.2d 462, 465 (citations omitted). Additionally, in determining whether the trial court's findings are supported by substantial credible evidence, this Court must view the evidence in the light most favorable to the prevailing party. *Roberts v. Mission Valley Concrete Indus.* (1986), 222 Mont. 268, 271, 721 P.2d 355, 357.

¶20 We review a district court's conclusions of law to determine whether those conclusions are correct. *Delaware v. K-Decorators, Inc.*, 1999 MT 13, ¶ 27, 293 Mont. 97, ¶ 27, 973 P.2d 818, ¶ 27 (citation omitted).

## DISCUSSION

*Did the District Court err in awarding a fifty-five percent penalty and attorney's fees to Greta Reier for unpaid wages even though she was married to William Reier, the sole owner of RBC, and her claim was thus excluded by § 39-3-406(1)(d), MCA, from coverage under Montana's wage protection statutes?*

¶21 RBC contends that a penalty pursuant to § 39-3-206, MCA, and attorney's fees and costs should not have been awarded to Greta, pursuant to Montana's wage protection

statutes. Specifically, RBC argues that its employment relationship with Greta clearly falls within one of the exclusions provided under § 39-3-406(1), MCA. Therefore, Greta may not avail herself to any of the wage protection statutes, according to RBC. We disagree.

¶22 Subsection (d) of § 39-3-406(1), MCA, provides that "immediate members of the family of an employer or persons dependent upon an employer for half or more of their support in the customary sense of being a dependent" are excluded from the minimum wage and overtime pay mandates of § 39-3-404 and 405, MCA, respectively. Conceivably, as an "immediate family member" of her employer, Greta could have worked in excess of 40 hours a week with little or no compensation, and could not have subsequently brought a wage claim against RBC.

¶23 We need not reach the issue of whether RBC qualifies as such an employer. How much compensation RBC paid Greta on an hourly basis is not in dispute; rather, *when* RBC was obligated to pay her back-wages upon her termination from employment has been the focal issue throughout this litigation. The exclusions under § 39-3-406, MCA, therefore, are inapplicable in this instance. They are expressly limited to matters concerning whether an employer is paying an employee the minimum wage required by law, *see* § 39-3-404, MCA, and whether the employer is properly paying an employee overtime pay as required by law, *see* § 39-3-405, MCA. *See also Rothwell v. Allstate Ins. Co.*, 1999 MT 50, ¶ 9, 293 Mont. 393, ¶ 9, 976 P.2d 512, ¶ 9.

¶24 The operative statute in this instance is § 39-3-205, MCA, which provides:

> (1) When an employee separates from the employ of any employer, all the unpaid wages of the employee are due and payable on the next regular payday for the pay period during which the employee was separated from employment or 15 days from the date of separation from employment, whichever occurs first, either through the regular pay channels or by mail if requested by the employee.

> (2) Except as provided in subsection (3), when an employee is separated for cause or laid off from employment by the employer, all the unpaid wages of the employee are due and payable immediately upon separation unless the employer has a written personnel policy governing the employment that extends the time for payment of final wages to the employee's next regular payday for the pay period or to within 15 days from the separation, whichever occurs first.

The District Court applied subsection (1) to the facts and determined that in spite of William's "Memo of Understanding," RBC owed Greta the back-wages as of January 31, 1997. From that date forward, the District Court found that RBC frustrated Greta's collection of the salary obligation, which led to her filing suit in June of 1997.

¶25 Nevertheless, RBC argues that "[i]f William Reier had not made the decision to pay her retroactively back to when she started working at Reier Broadcasting Company then the question of the company's obligation under Montana's Wage Protection statutes would not have arisen." This is precisely the point. William Reier chose to alter Greta's status from unpaid family member to salaried employee, and thereby invoke Greta's rights and remedies afforded to all employees under state law. Furthermore, RBC admitted at every procedural step of the way that Greta was its "employee," that RBC was her "employer," and it owed her "wages" during the relevant time period as defined under § 39-3-201, MCA. As for the "Memo of Understanding," the law provides that under § 39-3-208, MCA, "[a]ny contract or agreement made between an employer and an employee the provisions of which violate, evade, or circumvent this part is unlawful and void. . . ." That this dispute arose in the midst of a heated marital dissolution--a fact that RBC does not hesitate to point out--cannot excuse any employer in the state of Montana from following the clear mandates of our wage protection laws. Accordingly, RBC should have cut a check for Greta in January of 1997 for the full amount due rather than engage in eight months of dilatory tactics.

¶26 We therefore conclude that the District Court did not err in determining that RBC, in not timely paying Greta the wages owed pursuant to § 39-3-205, MCA, should be subject to a penalty "for failure to pay wages at times specified in law," pursuant to § 39-3-206, MCA. *See Delaware v. K-Decorators, Inc.*, 1999 MT 13, ¶ 32, 293 Mont. 97, ¶ 32, 973 P.2d 818, ¶ 32.

¶27 We now turn to whether the District Court correctly determined the statutory penalty applied to the back-wages in question. Greta raises two issues. She claims that the otherwise discretionary penalty of 110 percent under § 39-3-206, MCA, is mandatory pursuant to Department of Labor and Industry administrative rules, and that the penalty should have been assessed against the entire sum of wages owed, $16,000, rather than the $6,205.77, which was the final amount due at the time of trial. In both instances we agree.

¶28 Section 39-3-206(1), MCA, provides:

An employer who fails to pay an employee as provided in this part or who violates any other provision of this part is guilty of a misdemeanor. A penalty must also be assessed against and paid by the employer to the employee in an amount not to exceed 110% of the wages due and unpaid.

Under § 39-3-202, MCA, the commissioner of the Department of Labor and Industry is authorized to "issue, amend, and enforce rules for the purpose of carrying out the provisions of this part." This authority flows from the Montana Administrative Procedure Act, under § 2-4-101 through 711, MCA. Under this Act, pursuant to § 2-4-505, MCA, a court "shall take judicial notice of any rule filed and published under the provisions of this chapter." Further, under Rule 202(d), M.R.Evid., a court "shall take judicial notice . . . (2) of any other law when requested by a party and supplied with the necessary information."

¶29 Under Administrative Rules of Montana, Rule 24.16.7556, *Special Circumstances Justifying Maximum Penalty*, the "following conduct by the employer constitutes special circumstances that justify the imposition of the maximum penalty allowed by law:"

(c) the employer has previously violated similar wage and hour statutes within three years prior to the date of filing of the wage claim . . .

Further, under subsection (3) of this rule, the "maximum penalty is mandatory under the above circumstances and may be reduced only upon the written mutual agreement of the parties and the department."

¶30 The District Court found, and RBC does not refute, that the corporation recently "has been the subject of at least three prior wage claim actions by other employees." William Reier's testimony both in his deposition and at trial substantiates this fact. Likewise, RBC does not dispute, in any of its briefing, the validity or applicability of the administrative rules, which Greta presented first to the District Court and now on appeal. We therefore conclude that the District Court erred when it failed to take judicial notice of Rule 24.16.7556, ARM, and subsequently failed to apply the maximum penalty to the wages RBC owed Greta.

¶31 We further agree with Greta that the court erred when it concluded that "pursuant to § 39-3-205(1), the remaining $6,205.77 owed plaintiff was due by January 31, 1997," and that this sum should serve as the base amount upon which the penalty is determined. Clearly, the amount owed to Greta as of January 31, 1997, was $16,000, less state and

federal withholdings. The District Court correctly concluded that, pursuant to § 39-3-205 (1), MCA, RBC was required to pay Greta all unpaid wages no later than January 31, 1997 (although our reading of the statute indicates that this date, in fact, should have been set at no later than January 15, 1997). It is further clear that RBC, in accordance with William Reier's "Memo of Understanding," had no intention whatsoever in paying "wages" to Greta prior to August 1, 1997, in direct contravention of Montana law. William testified, in fact, that as a matter of corporate policy, he considered the pre-August payments as "advances" or "loans," rather than paychecks for wages.

¶32 We observe that pursuant to subsections (1) and (2) under Rule 24.16.7551, ARM, an employer who pays some or all of a contested wage claim prior to a final determination may be relieved in whole or part of paying a penalty. Nevertheless, the facts that RBC made "advances," and tendered the full amount of wages owed by August 1, 1997, are immaterial. Rule 24.16.7551, ARM, has one caveat: "unless any of the special circumstances described in ARM 24.16.7556 apply." Having already concluded that the "special circumstances described in ARM 24.16.7556 " do apply, we conclude that the 110 percent penalty must, as a matter of law, apply to the entire net back-wages owed to Greta at the time of her separation from employment with RBC.

¶33 Therefore, upon remand the District Court's award of a $3,413.17 statutory penalty is vacated, and it is directed to enter a judgment in favor of Greta Reier in the amount of $14,259.63, representing 110 percent of $12, 963.30, which the court found was the net pay owed by RBC in January of 1997.

¶34 Finally, we conclude that the District Court's determination that Greta was entitled to attorney's fees and costs, pursuant to § 39-3-214, MCA, was correct, and that the amount awarded in its December 22, 1998 Order was based on substantial evidence. We therefore affirm the judgment of $6,194.24 for Greta's attorney's fees and costs pursuant to § 39-3-214, MCA, and additionally recognize that § 39-3-214, MCA, applies to the costs and fees of an appeal. *See Glaspey v. Workman* (1988), 234 Mont. 374, 379, 763 P.2d 666, 669 (concluding that § 39-3-214, MCA, applies to attorney's fees incurred by employee on appeal). Greta is thereby entitled to such reasonable fees and costs for this appeal.

¶35 Accordingly, this case is remanded to the District Court for further proceedings consistent with this opinion.

/S/ JAMES C. NELSON

We Concur:

/S/ J. A. TURNAGE

/S/ WILLIAM E. HUNT, SR.

/S/ W. WILLIAM LEAPHART

/S/ JIM REGNIER