No. 99-298

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 184N

EMERY E. WALKER,

Plaintiff and Appellant,

v.

JOHN "JACK" GOGGINS,

Defendant and Respondent.

APPEAL FROM: District Court of the Sixteenth Judicial District,

In and for the County of Carter,

The Honorable Joe L. Hegel, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

J. Dennis Corbin, Attorney at Law, Miles City, Montana.

For Respondent:

Thomas E. Towe, Towe, Ball, Enright, Mackey & Sommerfeld, P.L.L.P., Billings, Montana

_____

Submitted on Briefs: December 9, 1999

Decided: July 18, 2000

Filed:

_____

Clerk

Justice Jim Regnier delivered the opinion of the Court.

1. ¶Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number, and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases

issued by this Court.

2. ¶Emery E. Walker appeals the Memorandum and Order of the Sixteenth Judicial District Court, Carter County, granting John Goggins' motion for summary judgment. We affirm. Walker's appeal raises the following issue: Whether the District Court erred in granting Goggins' motion for summary judgment?

## FACTUAL BACKGROUND

1. ¶In the late 1980s, Emery Walker's family declared bankruptcy and lost possession of their family ranch. Walker asked John Goggins, a livestock dealer, to assist him in repurchasing a portion of the ranch. In July 1991, Walker and Goggins entered into a Loan Agreement whereby they consigned two loans in the amounts of $139,000 and $71,000, and an operating line of credit for up to $15,300. Walker used the $139,000 loan to purchase one-third of the family ranch.

2. ¶On August 12, 1991, Walker and Goggins entered into an Agreement (hereinafter "1991 Agreement") concerning the consigned loans and operating line of credit. As part of the 1991 Agreement, the parties agreed that they would take title to the property purchased with the loan as joint tenants. Walker also agreed to execute a quitclaim deed conveying his interest in the property to Goggins, said deed to be delivered to Goggins if and when he defaulted or was unable to repay the notes and Goggins became responsible for payment. Goggins likewise agreed to execute a quitclaim deed conveying his interest in the property to Walker, said deed to be delivered to Walker upon Walker's repayment of the notes.

3. ¶According to the Loan Agreement, the real estate loan was scheduled for a balloon payment on December 12, 1993. Walker was unable to keep up with his payments and on March 23, 1993, a new bank note was issued in the amount of $6486 to allow Walker to pay the interest due on the three previous notes. At the same time, the loans which were the subject of the Walker and Goggins' Agreement were consolidated and renewed. On December 14, 1993, the Bank of Baker extended the maturity date on the consolidated loan. The Bank comment sheet indicates that the consolidated loan would be "reviewed for performance on the past year, prior to renewal." On February 1, 1995, the consolidated loan was refinanced and maturity was extended for another year. The Bank comment sheet states that Walker's financial statement reflected that he was "not profitable" and his income was "less than projected." On October 20, 1995, the Bank comment sheet stated that Walker's loans "merit special attention as a result of its poor performance and continued reliance on the financial strength of a guarantor for possible repayment."

4. ¶On January 10, 1996, the Bank rejected Walker's loan repayment plan. Subsequently, Walker and Goggins had an Agreement for Warranty Deed drafted. This agreement was a contract for deed which provided that Walker would purchase the ranch from Goggins. In anticipation of executing the agreement, Walker executed and filed a Quitclaim Deed releasing to Goggins all his interest in the ranch property. The Agreement for Warranty Deed, however, was never signed by the parties. On January 31, 1996, the consolidated loan was refinanced and Goggins became solely responsible for its repayment. The Bank comment sheet stated:

Previously it has been understood that Mr. Walker would be responsible for repayment of the notes. To date his cash flow has not allowed him to make satisfactory progress on the notes. Accordingly the notes were refinanced to Mr. Goggins who will now be solely responsible. . . .

1. ¶On May 29, 1997, Walker filed a complaint against Goggins seeking damages for fraud and deceit. On November 4, 1997, the court granted Goggins' motion for a more definitive statement. Walker filed an Amended Complaint on January 12, 1998. In his Amended Complaint, Walker alleged that he quitclaimed his interest in the ranch on the basis of Goggins' promise to enter the Agreement for Warranty Deed, Goggins did not execute that agreement, and, as a result, Walker was defrauded of his interest in the ranch. On February 1, 1999, Goggins filed a Motion for Summary Judgment. The District Court granted Goggins' Motion for Summary Judgment by Memorandum and Order dated March 13, 1999. Walker appeals.

## STANDARD OF REVIEW

1. ¶We review a district court order granting summary judgment *de novo* applying the same evaluation as the district court pursuant to Rule 56, M.R.Civ.P. *See Bruner v. Yellowstone County* (1995), 272 Mont. 261, 264, 900 P.2d 901, 903. In *Bruner*, we set forth our inquiry:

The movant must demonstrate that no genuine issues of material fact exist. Once this has been accomplished, the burden then shifts to the non-moving party to prove, by more than mere denial and speculation, that a genuine issue does exist. Having determined that genuine issues of fact do not exist, the court must then determine whether the moving party is entitled to judgment as a matter of law. We review the legal determinations made

by a district court as to whether the court erred.

*Bruner*, 272 Mont. at 264-65, 900 P.2d at 903 (citations omitted).

## DISCUSSION

1. ¶Whether the District Court erred in granting Goggins' motion for summary judgment?

2. ¶In Walker's Response to Defendant's Motion for Summary Judgment, Walker asserted two claims. First, Walker claimed that Goggins defrauded him of his interest in the ranch. To survive a motion for summary judgment, a party alleging fraud must establish a prima facie case by providing evidence of the following elements: a representation that is both false and material; the speaker's knowledge of its falsity or ignorance of its truth; the speaker's intent that it should be acted upon by the person and in the manner reasonably contemplated; the hearer's ignorance of its falsity; the hearer's reliance upon its truth; the right of the hearer to rely upon it; and the hearer's consequent and proximate injury or damage. *See Stanley v. Holms,* 1999 MT 41, ¶ 33, 293 Mont. 343, ¶ 33, 975 P.2d 1242, ¶ 33.

3. ¶Second, Walker also maintained that Goggins was liable for deceit under § 27-1-712, MCA, which provides:

(1) One who willfully deceives another with intent to induce him to alter his position to his injury or risk is liable for any damage which he thereby suffers.

(2) A deceit, within the meaning of subsection (1), is either:

. . . .

(d) a promise made without any intention of performing it.

1. ¶Either cause of action requires evidence of a misrepresentation in order to survive a motion for summary judgment. "Unless a present state of mind is misstated, there is of course no misrepresentation. When a promise is made in good faith, with the expectation of carrying it out, the fact that it subsequently is broken gives rise to no cause of action for [misrepresentation]." W. Page Keeton, et al., *Prosser and Keeton on the Law of Torts* § 109, at 764 (5th ed. 1984); *see also Roberts v. Mission Valley Concrete Indus.* (1986), 222 Mont. 268, 271, 721 P.2d 355, 356.

2. ¶The District Court concluded that Walker failed to produce any evidence that Goggins did not intend to enter the Agreement for Warranty Deed at the time he made his promise. We agree. We have not been directed to any evidence in either Walker's brief in response to Goggins' motion for summary judgment or in Walker's brief on appeal that would suggest that Goggins did not intend to fulfill his promise at the time he made it. In fact, the only evidence of Goggins' intent is the following colloquy from Goggins' deposition:

Q. (Walker's attorney) [Y]ou never intended to enter into a contract for warranty deed with Emery Walker?

A. No. That's not right. I did up until I found out that I already had a legal document to record that Emery said he didn't have and I didn't have.

1. ¶From the only evidence presented, it appears that Goggins intended to enter the contract for warranty deed with Walker at the time he made the promise. However, he failed to keep his promise because he subsequently discovered that he was already entitled to Walker's quitclaim deed under the terms of the 1991 Agreement. "Fraud is more than merely making a promise which the promisor fails to keep." *Roberts*, 222 Mont. at 271, 721 P.2d at 356. Accordingly, because Walker presented no evidence which would indicate that Goggins did not intend to fulfill his promise at the time it was made, a common element of Walker's cause of action for fraud and for deceit, we conclude that the District Court did not err in granting summary judgment in favor of Goggins.

2. ¶We note that the District Court also concluded that Goggins was entitled to the quitclaim deed under the 1991 Agreement because Walker was unable to pay the note and Goggins became solely responsible for its payment. Walker claims that he

was not "unable to pay" because he could have sought alternative financing. We agree with the District Court that there is no evidence in the record that Walker had the ability in January 1996 to continue to pay the notes and, in fact, all the evidence is to the contrary. In passing, we also note Walker did not bring a cause of action on the oral agreement, he only brought a cause of action for fraud and deceit. Accordingly, the enforceability of Goggins' oral promise to enter the 1996 Agreement for Warranty Deed was not before the District Court and is not before us. We agree with the District Court that Walker failed to produce any evidence that Goggins had a fraudulent intent when he promised to enter into a contract for deed.

3. ¶Affirmed.


/S/ JIM REGNIER



We Concur:


/S/ J. A. TURNAGE

/S/ KARLA M. GRAY

/S/ TERRY N. TRIEWEILER

/S/ W. WILLIAM LEAPHART