FILED

08/28/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 16-0594

DA 16-0594

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2017 MT 211

ERNIE WATTERS, et al., and all others similarly situated,

      Plaintiffs and Appellees,

  v.

CITY OF BILLINGS,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DV 09-43
Honorable Brenda R. Gilbert, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      James H. Goetz, Goetz, Baldwin & Geddes, P.C., Bozeman, Montana

      W. Anderson Forsythe, Afton E. Ball, Moulton Bellingham P.C.,
Billings, Montana

      For Appellees:

      L. Randall Bishop, Bishop & Heenan, Billings, Montana

      Lawrence A. Anderson, Attorney at Law, Great Falls, Montana

      Submitted on Briefs:  May 3, 2017

      Decided:  August 28, 2017

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Appellant City of Billings (City) appeals the orders and judgment of the Thirteenth Judicial District Court, Yellowstone County, holding the City incorrectly paid "longevity" wage benefits under successively negotiated Collective Bargaining Agreements (CBAs), and awarding damages to Appellees Ernie Watters, et al., and all others similarly situated (Officers). The City raises six issues, but we reverse and remand for further proceedings on the issue stated below, and do not address the additional issues:

*Did the District Court err by holding the CBAs were unambiguous and excluding extrinsic evidence concerning interpretation of those agreements?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 Officers are current and retired police officers, and members of the Montana Public Employees Association-Billings Police (Union). The Union, on behalf of the Officers, collectively bargains with the City to adopt an agreement governing the terms of the Officers' employment. The central dispute in this case is the correct interpretation of the longevity pay provisions in the 2000-2003, 2003-2006, and 2006-2009 CBAs entered by the City and the Union. Those provisions stated, in full:

> **2000-2003 CBA**:
>
> > Longevity shall be added to each officer's hourly rate based upon the following formula:
> >
> > .45 x .01 x the hourly rate of an officer at the beginning of year 1 x years of service.
>
> **2003-2006 CBA:**
>
> > Beginning July 1, 2003, longevity shall be added to each officer's hourly rate based upon the following formula:

2

.45 x .01 x the hourly rate of an officer from year 1 to 15 years of service.

.50 x .01 x the hourly rate of an officer after year 15.

**2006-2009 CBA:**

(Same language as in the 2003-2006 CBA, but with nearly appropriately corresponding dates.)

¶3 The City paid longevity pay to the Officers in accordance with its understanding of the contractual formula provided in the 2000-2003 CBA, including the language "x [or, times] the hourly rate of an officer at the beginning of year 1 x [times] years of service." The internal wording, "the hourly rate of an officer at the beginning of year 1," placed between two multiplication signs, was read by the City as a singular phrase that set the base wage to be used in the calculation, that being an officer's hourly wage rate "at the beginning of year 1." Further, the City understood the phrase coming after the second multiplication sign, "years of service," also provided in the 2000-2003 CBA, to mean years that an officer had actually served or completed. For example, the City would calculate longevity pay for an officer beginning his or her sixth year of employment based upon five years of completed service. Even though the phrase "at the beginning of year 1," and the multiplier based on "years of service," were not included in the 2003-2006 and 2006-2009 versions of the CBA, the City continued to calculate longevity pay pursuant to these terms, believing it had agreed with the Union to do so, and thus paid this longevity benefit over the entire period in dispute. The Union agreed with this calculation and is not a party in this proceeding.

¶4     The Officers filed suit in 2009, claiming the City had incorrectly calculated longevity pay under the CBAs. Specifically, the Officers claimed that the CBA required the City to pay "accumulated longevity enhancements." The Officers claimed that, instead of basing longevity on an officer's hourly wage rate at the beginning of year 1, the City was required to cumulatively "add longevity increases to each police officer's hourly rate" in order to calculate the "full longevity increase owed." The Officers claimed other damages associated with their longevity claim, including retirement contributions. The Officers asserted that the longevity provisions of the CBAs were "complete and unambiguous, and none of these provisions requires the introduction of extraneous evidence in order to interpret them." Officers requested, and the District Court certified, the matter as a class action.

¶5     The City answered, asserting it had initially paid and thereafter continued to pay the longevity benefit as negotiated with the Union under the CBA. Noting the changes in language in the successive CBAs, the City specifically denied Officers' assertion that the longevity provisions were unambiguous, and affirmatively asserted "that the introduction of extrinsic evidence is necessary to interpret them." Further, in a counterclaim, the City noted that later versions of the CBA had eliminated the multiplier for an officer's years of service and, pursuant to the Officers' assertion that the CBAs were unambiguous and amenable to a plain reading, the City had overpaid longevity to the Officers and, under such a reading, would be entitled to a refund. The District Court dismissed the City's

4

counterclaims as a matter of law, reasoning that they were dependent upon extrinsic evidence that was inappropriate to consider.

¶6     Officers moved for summary judgment on their claims and, in response to Officers' accumulation theory, the City cited *Raw v. City of Helena*, 139 Mont. 343, 347, 363 P.2d 720, 722 (1961), for the proposition that "it is to the base salary and not to the base salary plus longevity that longevity is added."  However, the District Court did not expressly address the Officers' accumulation theory, but rather focused on whether the CBAs were subject to a plain reading, reasoning that "[t]he Court finds that the language, 'longevity shall be added to each officer's hourly rate. . .' is clear, unambiguous, and easily understandable.    It is not ambiguous nor reasonably subject to two different interpretations."  (Emphasis original.)   Rejecting the City's argument that extrinsic evidence was necessary to properly understand the longevity provisions of the contracts, the District Court ruled that "[t]here can be no reasonable argument that the [CBAs] and the attachments thereto plainly state and mean anything other than that longevity **shall** be added to each officer's hourly rate. . . .  There is no need for extraneous or parol evidence." (Emphasis in original.)

¶7     Then, the District Court, in a few sentences at the end of its order, offered determinative examples about how longevity was to be calculated under the CBAs, and in so doing incorporated calculation issues that had not been pleaded or briefed by the parties, stating as follows:

> As an example, in 1994, an officer who is in his 11th year of service would calculate his longevity addition according to the formula:

5

.45 x .01 x $10.8898 x 11 = .539

For the same officer, who in 1995 would be in his 12th year of service, the longevity addition would be:

.45 x .01 x $11.2709 x 12 = .609

Although offering equations, the District Court did not reference any language in the CBAs or discuss any governing legal principles to explain its determination of the components therein, including its use of a years-of-service multiplier for periods when the CBAs included no multiplier, or, critically, its implied rejection of the City's long use of *completed* years of service in that multiplier. It did not analyze the specific language differences in the successive versions of the CBAs or the City's use of the contractual phrase "the hourly rate of an officer at the beginning of year 1" to calculate the base wage in the formula. The District Court simply reasoned that the CBAs "are complete, unambiguous, and easily understandable on their faces and require no extraneous evidence for interpretation" and provided example equations, with no source authority for the particular components and calculations employed in the example equations.[1]

¶8　　Following retirement of the presiding judge, Hon. Nels Swandal, the District Court's partial summary judgment order became known in the litigation as the "Swandal Formula," even though, technically, it provided no actual "formula" based upon contract language, but only example equations. Nonetheless, the order significantly altered the litigation going forward. The Officers thereafter embraced the equations the District Court

---

[1] It is not clear why the District Court used the years 1994 and 1995 in its equations.

6

had adopted *sua sponte,* rather than the accumulation theory drawn from the CBAs that they had originally stated in their complaint. The Officers' expert accountant testified:

> Q. And it's correct, is it not, that you did not use in your computations the longevity formulas that appear in the [CBAs].
>
> A. I believe I used the judge's—
>
> Q. Right.
>
> A. —requirement.
>
> Q. Right. I just wanted to make that clear. You didn't use the longevity formula in the three contracts, you used the Judge's order?
>
> A. That's correct.[2]

¶9 The District Court's *sua sponte* incorporation of a non-completed year of service within the years-of-service multiplier took the City by surprise, as that specific issue had not been previously raised in the litigation or briefed, and was contrary to the City's longstanding practice in wage agreement administration. As the City's Human Resource Director testified, when asked about the Swandal Formula:

> Of course, you know I disagree . . . . And you're going to tell me, well, Swandal has already heard that, but how do you have 1 year of experience at Day 1? I'm very passionate about that, because I don't understand that. We have 3 other groups that are also paid longevity. We have police—or sorry— teamsters, fire and non-bargaining, and all of those 3 groups also start after completed years of service. You have to complete a year before you get longevity . . . .

---

[2] Although not explained by the District Court in its order, the Swandal Formula may have impliedly incorporated portions of the Officers' original accumulation theory within its example equations. The City's protestations on appeal notwithstanding, the Officers cannot be faulted for embracing the Swandal Formula's more favorable contract interpretation and abandoning their original theory. Nonetheless, this development helps to illustrate that the CBAs were subject to multiple interpretations.

This understanding of longevity was echoed in the testimony of the Officers' Class Representative:

> Q. As far as you know, when the police union and the city in their longevity contracts talked about years of service, was the understanding that years of service was a count of completed years? That is, *you sign on, and at the end of 12 months, you've got a year*.
>
> A. I believe so, yes, sir. That would be longevity. [(Emphasis added.)]

¶10 Following a bench trial, the District Court issued findings of fact, conclusions of law and an order.[3] Ruling that "[t]he plain language of the CBAs governs the outcome of this case," the District Court again refused to consider extrinsic evidence offered by the City about the meaning of the longevity formulas in the CBAs. The court stated it was making "one exception" to this ruling, for purposes of considering extrinsic evidence about the years-of-service multiplier, reasoning the omission of the multiplier in the 2003-2006 and 2006-2009 CBAs was merely a "scrivener's error." Noting that Judge Swandal had previously "interpreted the formula such that an officer in his first year of service would have longevity calculated to include one year of service," the District Court adopted the same interpretation, concluding that "longevity must be calculated in accordance with the plain language of the CBAs, 'at the beginning of year one.'" Although the term, "at the beginning of year 1," was stated only in the 2000-2003 CBA, the District Court applied the term to the successive CBAs based on consideration of extrinsic evidence.

---

[3] Hon. Brenda Gilbert assumed the case upon Judge Nels Swandal's retirement, and conducted the trial.

8

¶11     However, while stating it was making this "one exception" to the exclusion of extrinsic evidence, the District Court nonetheless selectively considered and relied upon other extrinsic evidence that was critical to its findings of fact and conclusions of law. First, the District Court found that "[h]istorically, the City calculated longevity beginning on day one of year one." To support this factual finding, the District Court cited to extrinsic evidence—a purported internal City memorandum.[4]

¶12     Secondly, the District Court found that "the City does write plain language agreements calling for longevity increases only after completion of one year of service," citing to extrinsic evidence of the later 2009-2012 CBA negotiated between the Union and the City, which provided for longevity pay based upon "years of *completed* service." (Emphasis added.) Citing these two findings of fact, both clearly premised upon extrinsic evidence of the City's practices outside the subject CBAs, the District Court entered the following conclusion of law:

> The fact that the City historically paid longevity commencing in an officer's first year of service, and the fact that the City changed its longevity language, after this case was filed[,] to state that longevity was to be calculated based upon completed years of service, both cause the Court to question the credibility of the City's position to the contrary.

---

[4] In addition to challenging the District Court's reliance on this extrinsic evidence, the City also challenges the factual finding as clearly erroneous for lacking substantial evidence, because the purported memorandum on which the finding of fact is based does not actually exist, and, in any event, the finding is directly contrary to the clear record evidence that the City has continuously paid longevity only after an officer completes one year of service. The Officers do not answer the City's clearly erroneous argument. For purposes of our decision, we address the District Court's reliance on extrinsic evidence, but do not address whether the finding of fact is also clearly erroneous.

9

¶13     The District Court entered a final judgment requiring the City to pay the Officers $932,960.90, imposing a 110% penalty of $1,026,256.99, and awarding attorneys' fees of $653,072.63 and costs of $125,854.60, for a total of $2,738,145.12.  The City appeals.

**STANDARD OF REVIEW**

¶14     We review questions of law, including the interpretation of provisions in a collective bargaining agreement, for correctness.  *Kuhr v. City of Billings*, 2007 MT 201, ¶¶ 13, 18, 338 Mont. 402, 168 P.3d 615 (citing *Reier Broad. Co. v. Reier*, 2000 MT 120, ¶ 20, 299 Mont. 463, 1 P.3d 940; *Hughes v. Blankenship*, 266 Mont. 150, 154, 879 P.2d 685, 687 (1994)).

**DISCUSSION**

¶15     *Did the District Court err by holding that the CBAs were unambiguous and excluding extrinsic evidence concerning interpretation of those agreements?*

¶16     We are here concerned with whether the law was properly applied to the interpretation of a collective bargaining agreement.  "The interpretation of provisions in a collective bargaining agreement is a question of law."  *Kuhr*, ¶ 18 (citing *Hughes*, 266 Mont. at 154, 879 P.2d at 687); *accord Wurl v. Polson Sch. Dist. No. 23*, 2006 MT 8, ¶ 16, 330 Mont. 282, 127 P.3d 436.  If the "contract provision is clear and unambiguous," the "court must apply the language as written."  *Kuhr*, ¶ 18 (citing *Wurl*, ¶ 16).  However, "[i]f a contract term is ambiguous, interpretation of the term requires resolving a question of fact regarding the intent of the parties to the contract."  *Kuhr*, ¶ 18 (citing *Wurl*, ¶ 17); *accord In re Marriage of Mease*, 2004 MT 59, ¶ 30, 320 Mont. 229, 92 P.3d 1148 (holding a contract ambiguity requires "a determination of a question of fact:  the real intention of

10

the parties at the time of contracting"). Whether ambiguity exists is a "question of law for the court's determination." *Kuhr*, ¶ 18 (citing *Wurl*, ¶ 17). "An ambiguity exists where the language of the contract, as a whole, could reasonably be subject to two different meanings." *Kuhr*, ¶ 18 (citing *Wurl*, ¶ 17); *accord State v. Asbeck*, 2003 MT 337, ¶ 18, 318 Mont. 431, 80 P.3d 1272. If the court determines that an ambiguity is present in the instrument, then "extrinsic evidence may be introduced at trial to allow the trier of fact to determine the intent of the parties in entering into the contract." *Mary J. Baker Revocable Trust v. Cenex Harvest States Coop., Inc.*, 2007 MT 159, ¶ 55, 338 Mont. 41, 164 P.3d 851 [hereinafter *Baker Revocable Trust*].

¶17 The City and the Officers both acknowledge there are language inconsistencies within the subject CBAs, but disagree about the significance of these problems, and whether they rise to a contract ambiguity as a matter of law. Additionally, the parties read different meanings into the existent contract language. The Officers read the term "at the beginning of year 1" in the 2000-2003 CBA to mean that longevity is to be *paid* from the beginning of the first year of employment, and believe that phrases stated on pay matrices attached to the CBAs support this interpretation. They further argue that the term is meant to modify the years-of-service multiplier. In contrast, the City believes that the term must be read as part of the complete phrase set between two multiplication signs, "the hourly rate of an officer at the beginning of year 1," to mean that the rate of longevity pay is calculated based upon what Officers *earned* at the beginning of the first year of employment. Both of these interpretations of the contract language are reasonable

11

readings, thus creating a legal ambiguity. *Kuhr*, ¶ 18. The City argues that its interpretation, requiring an officer to complete a year of service, is supported by common meaning of the word "longevity," by common law rules of grammatical construction that generally require a term ("at the beginning of year 1") to modify the last antecedent ("the hourly rate of an officer"), and by the long history and practice of the parties under the CBAs. Of course, consideration of the parties' history and practice would first require a legal determination of contract ambiguity, followed by the admission of extrinsic evidence at trial. Such offers of proof were made by the City, but were denied by the District Court.

¶18 Adding to the interpretational difficulty is the fact that not one, but three, CBAs are at issue, providing different language. The contested term mentioned above, "at the beginning of year 1," is found only in the 2000-2003 CBA. Not only was its meaning contested, but the propriety of its continued application to the subsequent CBAs was another legal question to be determined in the proceeding. The District Court, both in the Swandal Formula and after trial, resolved these questions in the Officers' favor. The problem is that the Swandal Formula, premised upon no pleading or briefing, provided no explanation about how it arrived at these determinations, but simply incorporated them into equations; then, the District Court reached the same conclusions after trial by doing what it explicitly said it would not do—relying on extrinsic evidence of the City's practices outside the subject CBAs. As noted above, the District Court used extrinsic evidence to resolve the most critical longevity calculation issue: the rejection of the City's

demonstrably long practice of calculating years of service based upon *completed* years of service.

¶19    The District Court's legal analysis was inherently contradictory and legally incorrect.  Although concluding as a matter of law that the subject CBAs contained no ambiguity and could be resolved on their plain language, the District Court nonetheless considered and relied upon extrinsic evidence to interpret the CBAs.  "If the court determines that the instrument contains no ambiguity, then the extrinsic evidence may not be considered further."  *Baker Revocable Trust*, ¶ 55.  Only when "the court determines that an ambiguity is present in the instrument" may extrinsic evidence be introduced at trial to determine the intent of the parties.  *Baker Revocable Trust*, ¶ 55.

¶20    At a minimum, *some* ambiguity in the CBAs was acknowledged by the parties and by the District Court by applying the years-of-service multiplier to all of the CBAs, even though it was contained only in the 2000-2003 CBA.  While the District Court described this as a "scrivener's error," it nonetheless here required extrinsic evidence to interpret the CBAs correctly.  The District Court received extrinsic evidence on this point, but minimized its actions as the "one exception" it was making to the exclusion of such evidence.  However, despite this statement, the District Court cited and relied upon other extrinsic evidence in its findings of fact and conclusions of law.  It was an error of law to rely on extrinsic evidence in favor of the Officers, while imposing a blanket exclusion upon the extrinsic evidence offered by the City.  *Baker Revocable Trust*, ¶ 55.

¶21    We conclude from a review of the record that the District Court erred by concluding as a matter of law that the longevity provisions of the subject CBAs were unambiguous. The differing language of the successive CBAs are reasonably subject to more than one interpretation, and the blanket exclusion of all extrinsic evidence offered by the City—while selectively relying on other extrinsic evidence—was likewise erroneous. We reverse and remand for further proceedings consistent with this conclusion, and for consideration at trial of extrinsic evidence about the parties' intent, subject to application of the Rules of Evidence.

¶22    Reversed and remanded for further proceedings.

/S/ JIM RICE

We concur:

/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ DIRK M. SANDEFUR
/S/ JAMES JEREMIAH SHEA

Justice Michael E Wheat, dissenting.

¶23    I dissent from the Court's decision to reverse and remand the District Court's Final Order and Judgment. I conclude the District Court correctly ruled the City failed to pay Officers' wages and benefits, including longevity pay, in accordance with the applicable collective bargaining agreements between the City and the Union; therefore, I would affirm.

¶24 The majority opinion addresses a single issue: whether the District Court erred by holding that the CBAs were unambiguous and excluding extrinsic evidence concerning interpretation of those agreements. The Court contends that while the District Court ruled the CBAs were unambiguous, it nonetheless cited and relied upon extrinsic evidence beneficial to the Officers but excluded extrinsic evidence presented by the City. The Court holds that this was an error of law. I conclude that one of the three examples of the District Court's purported use of extrinsic evidence set forth in the Court's majority opinion, the example pertaining to scrivener's error, was appropriate. I further conclude the other two examples did not constitute inadmissible extrinsic evidence.

¶25 Extrinsic, or parol, evidence is evidence relating to a contract but not appearing on the face of the contract because it comes from other sources, such as statements between the parties, depositions, correspondence, or the circumstances surrounding the agreement. It is generally not admissible to contradict or add to the terms of an unambiguous contract. *Black's Law Dictionary* 675 (Bryan A. Garner ed., 10th ed. 2014). In other words, as noted above in ¶ 16, if a contract is clear and unambiguous, the court must apply the language as written and may not look to extrinsic evidence to interpret the language or determine the intent of the parties. *Kuhr*, ¶ 18; *Hanson v. Water Ski Mania Estates*, 2005 MT 47, ¶ 14, 326 Mont. 154, 108 P.3d 481.

¶26 Here, the Court faults the District Court for considering extrinsic evidence regarding the formula used to calculate longevity pay for Officers. Beginning in 1994, the City and the Union negotiated CBAs containing a formula developed to calculate the amount of

longevity pay to be added to the Billings police officers' hourly pay. Since 1994, the formula consistently contained two fractional multipliers (.45 and .01), but the remaining factors were less consistent. For example, the 1994-1997 CBA used the hourly rate of an officer at the beginning of year one (referenced as PD1) multiplied by the years of service. Consequently, the formula read: .45 x .01 x the hourly rate of PD1 x years of service. The 1997-2000 CBAs used the hourly rate of an officer at the beginning of year two; as a result, the formula was: .45 x .01 x the hourly rate of PD2 x years of service. In the subsequent and applicable CBAs, discussed below, the City again revised the formula factors.

¶27 As noted in ¶ 2 of the majority opinion, the three CBAs relevant to this case spanned the time periods of July 1, 2000-June 30, 2003 (CBA I), July 1, 2003-June 30, 2006 (CBA II), and July 1, 2006-June 30, 2009 (CBA III). The longevity clauses in each of these CBAs read:

> CBA I: Longevity shall be added to each officer's hourly rate based upon the following formula: .45 x .01 x the hourly rate of an officer at the beginning of year 1 x years of service.

> CBAs II and III: Beginning July 1, 2003,[1] longevity shall be added to each officer's hourly rate based upon the following formula:
> .45 x .01 x the hourly rate of an officer from year 1 to 15 years of service.
> .50 x .01 x the hourly rate of an officer after year 15.

¶28 As is readily apparent when reading these clauses, CBAs II and III do not reference that longevity must be calculated based upon the hourly rate of an officer "at the beginning

---

[1] It appears the drafter of CBA III failed to change the operable date in the longevity clause to July 1, 2006, as CBA III continues to read "Beginning July 1, 2003."

16

of year 1." Nor do the two latter CBAs include "years of service" as a critical and statutorily-required multiplier. Section 7-32-4116, MCA, addressing minimum wage and longevity pay of police in first- and second-class cities, states:

> (1) Each duly confirmed member of a police department of cities of the first and second class of Montana is entitled to a minimum wage for a daily service of 8 hours' work of at least $ 750 per month for the first year of service and thereafter at least $ 750 a month plus 1% of the minimum base monthly salary of $ 750 for each additional year of service up to and including the 20th year of additional service.

> . . .

> (3) Added salary for years of service will be based on the base monthly salary as established in this section and not on the actual current salary.

¶29 The City testified that the omissions in CBAs II and III were inadvertent[2] and the City continued to calculate and pay longevity in the same manner it had done under CBA I, using an officer's base rate pay during his or her first year of service and multiplying it by the number of years the officer had served. Accepting this undisputed testimony, the District Court, then-presiding Judge Swandal, noted in its March 8, 2011 order that these omissions were scrivener's errors and reformed CBAs II and III accordingly. Subsequently, Judge Gilbert, presiding over the case following Judge Swandal's

---

[2] As testified to by the City, the corrected formula in CBAs II and III would read:

.45 x .01 x the hourly rate of an officer at the beginning of year 1 x years of service from year 1 to 15 years of service.
.50 x .01 x the hourly rate of an officer at the beginning of year 1 x years of service after year 15 of service.

retirement, incorporated reference to this scrivener's error in the court's January 28, 2016 Findings of Fact, Conclusions of Law and Order.

¶30 The City now appears to argue on appeal that the District Court erred by accepting its repeated admission that CBAs II and III failed to include "at the beginning of year 1" and "years of service" in its longevity formula. In admitting this inadvertent omission, the City also informed the District Court that its absence did not affect the manner in which it calculated officer longevity and that it performed under CBAs II and III as it had under CBA I, using the omitted factors as before. By admitting that it continued calculating longevity as it had under CBA I, the City was also admitting that the absence of the formula factors did not render CBAs II and III ambiguous from its perspective. Consequently, informed that the omissions had no effect on the City's performance, the District Court concluded it was a scrivener's error and incorporated the "corrected" formula into its July 8, 2011 order. The City did not object to the order and later praised Judge Swandal's manifest and correct understanding of the CBAs.

¶31 Subsequently, in December 2013, the City began arguing the meaning of "years of service," asserting it actually meant "years of completed service." As such, the City now argues that the District Court erred by reforming CBAs II and III based upon extrinsic evidence, i.e., its admissions of inadvertent error as it pertains to the longevity formulas in CBAs II and III. The City claims the court did not err by adding the omitted language but that it erred by not attributing the City's meaning of the omitted language. This argument should not be well taken. The District Court concluded the language of CBA I was

18

unambiguous. Inserting the identical language into CBAs II and III did not render those agreements ambiguous. "It has long been the rule of this Court that on appeal we will not put a district court in error for a ruling or procedure in which the appellant acquiesced, participated, or to which appellant made no objection." *State v. Daniels*, 2017 MT 163, ¶ 34, 388 Mont. 89, 397 P.3d 460.

¶32 The second reference to extrinsic evidence noted in the Court's majority opinion is the court's factual finding regarding the first date upon which the City historically calculated longevity. Finding of Fact No. 17 states:

> The City's handling of the longevity formula has not been consistent. Historically, the City calculated longevity beginning on day one of year one. However, at times, the City computed longevity beginning in year two, as it now argues is proper. This inconsistent calculation of longevity was detailed in a Memo sent to Karla Stanton by a computer specialist employed by the City.

¶33 The Court notes that the City claims the memo does not exist; however, the existence or lack thereof of the memo is not decisive. The District Court heard testimony that the City's payment of longevity pay was inconsistent but ruled that the unambiguous language of the CBA required the City to pay past due longevity calculated "at the beginning of year one" in accordance with the plain language of the CBAs. The District Court's reference to evidence revealing the City's inconsistency was not an improper reliance on extrinsic evidence as it was not used to interpret the agreement or determine the parties' intent. Rather, it was an acknowledgment that the City was not calculating longevity in the manner required by the applicable CBAs.

19

¶34 Notably, the District Court has twice ruled that the applicable CBAs dictate that longevity pay begins on an officer's first day of employment and not after a completed year of service. The District Court first concluded this in its July 8, 2011 order. At that time, Judge Swandal was tasked with ruling on Watters' motion for partial summary judgment in which Watters argued the City failed to add longevity payments to each officers' base hourly rate; rather, the City erroneously paid longevity as a separate, stand-alone payment. This stand-alone method resulted in the underpayments of longevity benefits. Judge Swandal concluded that the language of the CBAs unequivocally required the City to add longevity payments to each officers' hourly rate. While the parties had not yet raised the issue of the meaning of "years of service," the court set forth the following example, applying the formula to "an officer who is in his 11th year of service": .45 x .01 x $10.8898 x 11 = .539. In this example, by using eleven years of service before the officer had completed the eleventh year of service, the District Court interpreted the CBA to provide instant longevity. As noted above, the City did not object to the court's interpretation at that time and later lauded the District Court's "straightforward example." It was not until December 2013 that the City asserted that "years of service" meant "years of *completed* service" and that neither the City nor the Union intended the City to pay instant longevity.

¶35 Subsequently, in January 2016, the District Court, Judge Gilbert presiding, issued its Findings of Fact, Conclusions of Law and Order and determined, as did Judge Swandal, that under CBAs I-III, longevity pay began "in an officer's first year of service."

20

¶36 Lastly, the District Court's third reference to extrinsic evidence, as pointed out in the majority opinion, is the District Court's reference to the July 1, 2009-June 30, 2012, CBA between the Officers and the City. In this collective bargaining agreement, drafted as the case before us was proceeding, the "years of service" longevity pay factor was revised to expressly state "years of *completed* service." Again, the court's review of the 2009-2012 CBA was not intended to obtain evidence to aid in the interpretation of the earlier CBAs, or determine the intention of the parties. It was referenced to illustrate that the City was capable of drafting an agreement that clearly stated its intention to calculate and pay longevity benefits based upon years of *completed* service. Moreover, the District Court's observation of the change in the 2009 CBA went to the City's credibility, rather than to contract interpretation.

¶37 It is well-established that courts must enforce written contracts as written and not insert what has been omitted or omit what has been inserted. Section 1-4-101, MCA. Additionally, "[e]vidence of surrounding circumstances may not be used to add to, vary, or contradict the terms of the contract. Nor may extrinsic evidence be used . . . to show an intention independent of the instrument." *Broadwater Dev., L.L.C. v. Nelson*, 2009 MT 317, ¶ 21, 352 Mont. 401, 219 P.3d 492 (internal citations omitted).

¶38 In this case, the District Court concluded that CBA I was unambiguous and clearly stated that longevity was to be added to an officer's hourly rate at the beginning of year one. The court subsequently reformed CBAs II and III based upon the City's testimony that it erroneously omitted reference to an officer's hourly rate *at the beginning of year one*

21

*x years of service.* After reformation based upon admitted scrivener's error, the three CBAs clearly stated that an officer's longevity pay was to be calculated "at the beginning of year 1." The City has ample experience in drafting CBAs with its fire and police providers as reflected in the 1997-2000 CBA in which the City based longevity upon the hourly rate of an officer at the beginning of his or her second year of service and the 2009-2012 CBA draft expressly stating that calculation of longevity was based upon years of *completed* service. While the City strenuously argues against the court's interpretation, the District Court and this Court must interpret the language in the contract before it.

¶39 Additionally, I believe the Court is remiss in failing to address other issues raised by the parties on appeal. Those issues, including but not limited to the proper statute of limitations, the appropriate class members based upon accrual date, and certain damage awards, are likely to be raised and/or challenged in the subsequent proceeding on remand and may very well be subject to a subsequent appeal. As these issues are currently before this Court, they should be resolved prior to remand.

¶40 I conclude the Court's majority improperly put the District Court in error for accepting extrinsic evidence to appropriately reform CBAs II and III based upon admissions of inadvertence. I further conclude the "extrinsic" evidence the majority asserts the District Court relied upon, i.e., the City's inconsistent payment of longevity pay and the court's reference to the 2009 CBA, was not extrinsic evidence in that the court did not rely upon it to assist in interpreting the plain language of the CBAs or to discern the intent of the parties. Lastly, I conclude the District Court correctly interpreted the plain language

22

of the contract and refused to accept contradicting extrinsic evidence.  I dissent from the Court's decision to reverse.

/S/ MICHAEL E WHEAT

Chief Justice Mike McGrath joins the Dissent of Justice Michael E Wheat.

/S/ MIKE McGRATH